Curtis L. WRENN, Plaintiff–Appellant,

v.

SECRETARY, DEPARTMENT OF VET-
ERANS AFFAIRS and Clark C. Gran-
inger, Director, Veterans Administra-
tion Medical Center, Defendants–Appel-
lees.

No. 32, Docket 90–6089.

United States Court of Appeals,
Second Circuit.

Argued Sept. 13, 1990.

Decided Nov. 16, 1990.

**1074**

Curtis L. Wrenn, Fort Drum, N.Y., pro se.

Bernard J. Malone, Jr., Asst. U.S. Atty., Albany, N.Y. (Frederick J. Scullin, Jr., U.S. Atty. N.D. New York, Albany, N.Y., of counsel), for defendants-appellees.

Before LUMBARD, WINTER and MINER, Circuit Judges.

WINTER, Circuit Judge:

This appeal raises the question of whether an employment discrimination claimant who rejects an offer of full relief during administrative proceedings may continue to press his claims in a civil action. Plaintiff Curtis L. Wrenn appeals from Chief Judge McCurn's order granting defendants' motion for summary judgment on the ground that Wrenn had refused an offer of full relief. Because permitting actions such as Wrenn's would seriously undermine the statutory policy favoring the administrative resolution of employment discrimination complaints by means of "conciliation, conference and persuasion," 29 U.S.C. § 626(d) (1988); *see also* 42 U.S.C. § 2000e–5(b) (1988), and because, on these facts, the offer of full relief effectively eliminated the factual basis for a prima facie case of disparate treatment, we affirm.

## BACKGROUND

Wrenn is a sixty-year-old black male. In May 1986, Wrenn answered a newspaper advertisement for a clerk-typist position at the Veterans Administration Medical Center ("VAMC") in Albany, New York. His application contained a Personal Qualifications Statement that indicated that he was not interested in a temporary position. On June 17, the VAMC returned Wrenn's application with a letter informing him that in order to be considered for employment he must "attain eligibility on an Office of Personnel Management list." Wrenn, not a neophyte in the area of employment discrimination claims,[1] immediately wrote the VAMC's Equal Employment Opportunity ("EEO") counselor and charged that the VAMC's proffered reason for returning his application was a pretext for race and age discrimination. Several days later, Wrenn met with a personnel officer at the VAMC who, according to Wrenn, was unable to explain why the application was returned but agreed to forward it to the Office of Personnel Management for processing. On July 9, Wrenn passed a noncompetitive clerical examination and was placed on a list of seven eligible applicants for clerk-typist positions. The VAMC hired three of those on the list. Wrenn was not among the three. Those hired were substantially younger than Wrenn. At least one was black. The race of the others is unknown.

In early December, Wrenn wrote to the VAMC expressing his continued interest in employment as a clerk-typist. On December 23, he renewed his charge of race and age discrimination to the EEO Counselor, and on March 17, 1987, filed a formal employment discrimination complaint with the Veterans Administration ("VA"). He sought a remedy of "immediate hire with back pay from May 1986."

The EEO investigator's report recommended a finding of discrimination. The investigator found that Wrenn had "present[ed] facts, which if unrebutted, could indicate the occurrence of discrimination." These facts appear to be his disbelief of the VAMC's explanation for its failure to hire Wrenn. That explanation was that the advertised positions were temporary and that Wrenn's Personal Qualifications Statement indicated that he was not interested in temporary employment. However, the advertisement to which Wrenn responded did not state that fact. The EEO investigator appears to have concluded that the advertisement's failure to inform Wrenn of the temporary nature of the available positions supported a finding of discrimination.

On July 18, 1988, in an attempt to resolve his complaint and pursuant to an Equal Employment Opportunity Commission ("EEOC" or "Commission") regulation, 29 C.F.R. § 1613.217(a), the VAMC offered Wrenn the following:

1. Clerk–Typist GS–322–4—Temporary Appointment
2. Full relief under the Back Pay Act
3. Any seniority that you may have earned.

Three days later, Wrenn refused the offer and tendered a "counter-proposal" demanding

1. Immediate hire in a position in Hospital and Health Care Administration

---

**1.** We cannot determine how many actions Wrenn has brought in federal courts. However, since 1985, Wrenn has been the appellant in at least forty *pro se* appeals in the Second, Fourth, Sixth and District of Columbia Circuits. He has been repeatedly cautioned and occasionally sanctioned for pursuing frivolous claims and appeals. His many civil rights actions led the Sixth Circuit to state:

> Wrenn's litigiousness is alarming. He is creating a small, very specialized library of cases on civil rights litigation all by himself. In this very case, two of Wrenn's earlier cases have been cited for the legal propositions there involved. What is more disturbing is that his multiplicitous filings waste judicial resources and the resources of the other parties involved. Wrenn's abuse of the civil rights laws to manufacture litigation is most distressing. His numerous unfounded civil rights challenges bring the noble purposes of the Civil Rights Acts into disrepute, turning attention away from the need to alleviate, and eventually eradicate, prejudice and discrimination, and focusing attention instead upon unwarranted costs and injustices that are suffered by defendants who must mount and fund a defense to groundless civil rights claims.

*Wrenn v. Gould*, 808 F.2d 493, 505 (6th Cir. 1987).

and/or Personnel Management, in grade GS–9 or higher.

2. Full relief for the willful denial of equal employment opportunity, in violation of the Age Discrimination in Employment Act.

3. Seniority from at least May 22, 1984 on the basis of federal employment and combat services in South Vietnam.

On August 1, the VAMC transmitted to the VA Office of Equal Opportunity copies of its settlement offer and Wrenn's response, requesting that the offer be certified as full relief and the complaint be canceled. On August 10, the Office of Equal Opportunity certified that the proposed settlement constituted full relief, and on September 30, the VA notified Wrenn of its final decision to cancel his complaint.

Wrenn subsequently appealed to the EEOC. On March 17, 1989, the EEOC affirmed the cancellation of Wrenn's complaint, finding that he had rejected a properly certified offer of full relief and that his counter-proposal requested relief unrelated to his discrimination complaint. On April 3, Wrenn filed the instant complaint in the Northern District of New York stating claims under the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e–16 (1988), and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633a (1988).

In a memorandum opinion dated February 13, 1990, Chief Judge McCurn concluded that the VAMC had offered Wrenn "all he was entitled to in its offer of full relief on July 18, 1988" and that the defendants were entitled to summary judgment.

## DISCUSSION

Wrenn argues first that the VAMC's settlement offer was not certified as full relief until after it was made and rejected. He also raises three objections to the relief itself. First, he argues that the offer of a temporary appointment could not provide full relief for the VAMC's refusal to hire him for the advertised position because the advertisement did not indicate that the position was temporary. Second, he contends that the VAMC should have informed him

of a right to receive backpay in the form of liquidated damages in the event he declined the offer of employment. Finally, he asserts that the settlement offer was deficient because it offered "[f]ull relief under the Back Pay Act," a statute that he was unable to locate. We reject his claims and affirm.

### A. The Offer of Full Relief

■ We agree with Chief Judge McCurn that the VAMC offered Wrenn full relief. The settlement proposal included the three basic components of "make whole" relief in hiring discrimination cases: a job offer, backpay, and retroactive seniority. *See, e.g., Franks v. Bowman Transp. Co.*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976) (establishing presumption in favor of awarding retroactive seniority); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) (establishing presumption in favor of awarding backpay). Wrenn's contentions to the contrary are wholly without merit.

■ First, the VA Office of Equal Opportunity certified that the VAMC's settlement proposal constituted full relief. Although Wrenn correctly notes that the certification took place on August 10, 1988, after he had rejected the offer, the applicable regulation contains no requirement that certification occur before an offer is made and rejected. It provides simply that the agency may cancel a complaint where the complainant has refused a settlement offer, "provided that the agency's Director of Equal Employment Opportunity, or a designee reporting directly to the Director, has certified in writing that the agency's written offer of relief constitutes full relief." 29 C.F.R. § 1613.215(a)(7) (1990). The district court was therefore correct to conclude that there were no issues of material fact concerning certification.

■ Second, Wrenn argues that the VAMC's offer of a temporary clerk-typist appointment was not full relief since the newspaper advertisement to which he responded did not describe the positions as temporary. The failure of the ad to note

this fact is of no consequence, however, because it is uncontroverted that the jobs were in fact temporary. The affidavit of Kara Jordan, a VAMC Personnel Assistant, states that the available positions were temporary and that the majority of all VAMC clerical hiring is for temporary positions. Wrenn has neither offered evidence to the contrary nor claimed that any exists. Any loss suffered as a result of discrimination, therefore, was that of a temporary position. Whatever Wrenn's private expectations may have been does not undermine this conclusion because any misleading aspect of the advertisement affected all readers, without regard to race or age.

■ Third, Wrenn contends that the VAMC failed to inform him that he was entitled to receive an award of backpay in the form of liquidated damages in the event he declined the VAMC's offer of employment.[2] This contention appears to be that the VAMC offer was defective because it offered too much rather than too little. Wrenn's complaint, to which the VAMC's settlement offer was specifically directed, sought "immediate hire [as a clerk-typist] with back pay from May 1986.-" The VAMC thus offered Wrenn precisely what he requested, including backpay. At no time did Wrenn indicate that he was disposed to drop his demands for the job and retroactive seniority.

■ Fourth, Wrenn complains that by offering him "[f]ull relief under the Back Pay Act" the VAMC referred to a nonexistent statute. Although the Back Pay Act does indeed exist, 5 U.S.C. § 5596 (1988), its provisions apply only to agency employees, not to job applicants such as Wrenn. The offer thus did refer to an inapplicable statute. Despite this error, the disputed language communicated the VAMC's intention to offer Wrenn the backpay to which he would have been entitled if he had prevailed on his complaint. Wrenn's response to the offer neither sought clarification of the VAMC's back-

pay offer nor raised the issue of the applicability of the Back Pay Act. Instead, he sought an entirely different job and two years of additional and unwarranted seniority.

## B. The Consequences of Refusing an Offer of Full Relief

Having determined that there were no issues of triable fact concerning whether Wrenn refused an offer of full relief, we now address the consequences of such a refusal. Neither the district court nor the defendants have cited, nor has our research revealed, any decisions concerning whether a refusal of an offer of full relief during administrative proceedings on a discrimination claim precludes the claimant from seeking to litigate that claim.

Both Title VII and the ADEA give employment discrimination claimants the right to institute a civil action, 42 U.S.C. § 2000e–5(f)(1) (against private employers); 42 U.S.C. § 2000e–16(c) (against federal government); 29 U.S.C. § 626(c) (against private employers); 29 U.S.C. § 633a(c) (against federal government). However, the right to bring suit under either statute is conditional.

Under Title VII, a rejected applicant for federal government employment, such as Wrenn, first must file a timely charge of discrimination with the employing agency. 42 U.S.C. § 2000e–16(c); 29 C.F.R. § 1613.214 (1990). The claimant is then authorized to file a civil action (i) within thirty days of receiving notice of a final administrative decision on the complaint, or (ii) if, after 180 days from the date of filing a complaint with the agency or an appeal with the EEOC, there has been no administrative decision. *See* 42 U.S.C. § 2000e–16(c); 29 C.F.R. § 1613.281 (1990). Wrenn was thus obliged to exhaust administrative proceedings before filing a civil action under Title VII.

---

**2.** Wrenn relies on 29 C.F.R. § 1613.271(b)(1), which requires an agency that has made a finding of discrimination against a job applicant to offer that person the relevant job plus backpay, and to inform him of his right to receive only

backpay should he decline the job offer. In the instant case, however, the VAMC made no formal finding of discrimination, but instead simply entered into voluntary settlement negotiations as authorized by 29 C.F.R. § 1613.217(a).

■ Under the ADEA, an applicant for federal government employment may bring suit (i) thirty days after giving notice to the EEOC of an intent to file suit, or (ii) after receiving notice of a final administrative decision on a timely-filed discrimination complaint. *See* 29 U.S.C. § 633a(b)–(d); 29 C.F.R. § 1613.514 (1990). We believe that Wrenn, having initiated administrative proceedings on his ADEA claim, was thus obliged to exhaust such proceedings before filing a civil action under the ADEA. There is a split among the circuits on the question of whether a claimant who initiates the administrative process must pursue that process to a final agency decision. While the Fifth and Sixth Circuits have concluded that an ADEA claimant need not exhaust his administrative remedies before filing suit, the First and Third Circuits have held that exhaustion is required. *Compare Langford v. U.S. Army Corps of Engineers*, 839 F.2d 1192, 1193–94 (6th Cir. 1988) (exhaustion not required), *and Paterson v. Weinberger*, 644 F.2d 521, 523–24 (5th Cir.1981) (same) (in *dictum*) *with Castro v. United States*, 775 F.2d 399, 404 (1st Cir.1985) (exhaustion required) *and Purtill v. Harris*, 658 F.2d 134, 138 (3d Cir.1981) (same), *cert. denied*, 462 U.S. 1131, 103 S.Ct. 3110, 77 L.Ed.2d 1365 (1983). We appear never to have addressed this question. We agree with the *Purtill* court's reasoning that "[a]llowing a plaintiff to abandon the administrative remedies he has initiated would tend to frustrate the ability of the agency to deal with complaints." 658 F.2d at 138. Wrenn, having initiated administrative proceedings on his ADEA claim, was thus obliged to exhaust such proceedings before filing a civil action under the ADEA.

The purpose of these statutory prerequisites to bringing a civil action—and the well-established policy of the employment discrimination laws—is to provide an opportunity for the resolution of discrimination complaints by means of "conciliation, conference, and persuasion." 29 U.S.C. § 626(d); *see also* 42 U.S.C. § 2000e–5(b). This is an important policy of the anti-discrimination laws, and the Supreme Court has accordingly stressed the legislative preference for voluntary conciliation. In *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 44, 94 S.Ct. 1011, 1017, 39 L.Ed.2d 147 (1974), the Court observed that:

> Cooperation and voluntary compliance were selected as the preferred means for achieving [the goal of assuring equal employment opportunity]. To this end, Congress created the Equal Employment Opportunity Commission and established a procedure whereby ... the Commission ... would have an opportunity to settle disputes through conference, conciliation, and persuasion before the aggrieved party was permitted to file a lawsuit.

■ Judicial elaboration of the exhaustion requirement has imposed an additional obligation of good faith participation in the administrative process on claimants who wish to bring civil actions. *See, e.g., Munoz v. Aldridge*, 894 F.2d 1489, 1492 (5th Cir.1990). A claimant thus must cooperate in the administrative investigation of the complaint by making specific charges, *Edwards v. Department of the Army*, 708 F.2d 1344, 1347 (8th Cir.1983); *Johnson v. Bergland*, 614 F.2d 415, 417 (5th Cir.1980), and by providing information necessary to the investigation, *Jordan v. United States*, 522 F.2d 1128, 1133 (8th Cir.1975).

■ The purpose of the good faith participation requirement is to give the administrative process an opportunity to work and to enhance the chances of administrative resolution. It follows that a claimant who is offered full relief in the administrative process must either accept the relief offered or abandon the claim. To allow claimants such as Wrenn to continue to pursue claims that have been fully remedied during the administrative process would frustrate the congressional policy favoring administrative resolution of complaints for no discernible reason. Continued pursuit of such claims consumes judicial and other resources, resulting in a dead-weight social loss except for giving satisfaction to litigants who prefer court proceedings to administrative relief. However, litigation is not a sport in which the hunter may release

a trapped quarry for the thrill of further chase.[3]

 We also believe that summary judgment is warranted on the alternative ground that the offer of full relief effectively rebutted Wrenn's prima facie case of discrimination. To establish a prima facie case, the plaintiff must prove only "that [he] applied for an available position for which [he] was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Texas Dep't of Commun. Aff. v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). Wrenn alleged that he was qualified for the clerk-typist position for which he applied. He further alleged the VAMC hired younger, non-minority applicants because of an intent to discriminate against him on the basis of his race and age. These allegations, if proven, would establish a prima facie case of disparate treatment under *Burdine*. However, the VAMC's offer of full relief rebuts that showing. The present record contains no direct evidence of racial animus or of a desire to avoid older workers. Wrenn had undisputably stated to the VAMC that he was not interested in a temporary position, and the offer of full relief after he filed his claim fully substantiates the VAMC's claim of a race- and age-neutral reason for failing to hire him initially. Wrenn bore the burden of persuasion that the VAMC's explanation was pretextual. *See Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. However, Wrenn's response to the motion for summary judgment contained no evidence to rebut the VAMC's showing and, given his previous expressed disinterest in a temporary position, he could not carry that burden as a matter of law in the face of the offer of relief.

Affirmed.

---

**3.** The requirement that an employment discrimination plaintiff be given a *de novo* adjudication in a civil action, *Chandler v. Roudebush*, 425 U.S. 840, 844–46, 96 S.Ct. 1949, 1951–53, 48 L.Ed.2d 416 (1976), was thus fulfilled by the *de novo* adjudication of whether Wrenn refused an offer of full relief.