Willie E. ELSBERRY, Jr., and Eartha M. Elsberry, Plaintiffs,

v.

Donald B. RICE, Secretary, Department of the Air Force, Richard B. Cheney, Secretary, Department of Defense, the United States of America, Defendants.

Civ. A. No. 92–633–JLL.

United States District Court, D. Delaware.

May 5, 1993.

Valerie E. Fox, Seaford, DE, for plaintiffs.

William C. Carpenter, Jr., U.S. Atty., Patricia C. Hannigan, Asst. U.S. Atty., Dept. of Justice, Wilmington, DE, Lesa L. Carter, U.S. Air Force, Air Force Legal Services Agency, Arlington, VA, for defendants.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

### I. INTRODUCTION

Before the Court is the motion of defendant Donald B. Rice, Secretary of the Department of the Air Force, defendant Richard B. Cheney, former Secretary of the Department of Defense, and defendant the United States of America, to dismiss plaintiffs' complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure and to dismiss Richard B. Cheney as a party defendant. (D.I. 8.) On October 30, 1992, plaintiffs, Mr. Willie M. Elsberry, Jr. and his wife, Mrs. Eartha M. Elsberry, filed this civil action against the defendants. (D.I. 1.) Al-

though plaintiffs' complaint satisfies the liberal notice pleading requirements of the Federal Rules of Civil Procedure, it is hardly a model of draftsmanship. The complaint contains only two counts but in actuality asserts four distinct causes of action against the defendants. The complaint first alleges that the defendants ·discriminated against Mr. Elsberry on the basis of .race in contravention of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981, (hereinafter referred to as the "§ 1981 claim"). Second, the complaint alleges that the aforesaid racial discrimination of the defendants ·also constitutes a violation of section 717 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–16. Third, the complaint alleges that the defendants discriminated against Mr. Elsberry on the basis of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633a. Fourth, and finally, the complaint alleges that the aforesaid racial discrimination of the defendants further constitutes a violation of the Federal Tort Claims Act, 28 U.S.C. §§ 2671 et seq. Mr. Elsberry seeks an unspecified amount of compensatory damages for mental anguish, loss of income and earning capacity. Mrs. Elsberry seeks an unspecified amount of compensatory damages under the Federal Tort Claims Act for loss of consortium.

■ After the defendants filed their present motion, (D.I. 8), and their opening brief in support thereof, (D.I. 9), the plaintiffs made various concessions in their answering brief, (D.I. 13), which must be addressed before proceeding to any discussion of defendants' motion. First, the plaintiffs concede that § 1981 and the Federal Torts Claims Act do not provide the plaintiffs with· an appropriate remedy in this case because Mr. Elsberry is a federal employee. (D.I. 13 at 2.) As a federal employee, Mr. Elsberry's exclusive and preemptive judicial remedy for his claims of racial discrimination is supplied by section 717 of Title VII of the Civil Rights Act of 1964, as amended. *See Brown v. General Services Administration,* 425 U.S.

820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976). Second, the plaintiffs concede that the former Secretary of the Department of Defense, Richard B. Cheney, is not a proper party to this lawsuit because the Department of the Air Force is the only agency involved in this litigation, and therefore, only the Secretary of the Department of the Air Force is a proper party defendant. (D.I. 13 at 2.) *See* 42 U.S.C. § 2000e–16(c) (A federal employee, within the time limits set forth in this section, "may file a civil action ... in which ... the head of the department, agency, or unit, as appropriate shall be the defendant."). In light of these concessions, the Court will: (1) dismiss without prejudice both plaintiffs' § 1981 claim and plaintiffs' Federal Tort Claims Act claim; (2) dismiss the United States as a party defendant since the only claim against the United States, plaintiffs' Federal Tort Claims Act claim, will be dismissed without prejudice; (3) dismiss plaintiff Eartha Elsberry as a party plaintiff since her only claim.for relief is for loss of consortium under the Federal Tort Claims Act; and (4) dismiss Richard B. Cheney as a party defendant [1].

Thus, only plaintiff's Title VII claim and plaintiff's ADEA claim remain and warrant further discussion by the Court. For the reasons set forth more fully below, the Court will also dismiss without prejudice these two remaining claims because of plaintiff's failure to exhaust his administrative remedies.

## II. PROCEDURAL HISTORY AND BACKGROUND

Mr. Elsberry is a 58–year–old black male, who retired from active duty after a career in the United States Air Force. Upon his retirement from active duty, Mr. Elsberry continued in the employment of the United States Air Force as a civilian and occupied the position of manager of the the officers' open mess ("officers' club") at the United States Air Force Base in Dover, Delaware. On September 30, 1990, Mr. Elsberry retired from the civil service, but remained in his

---

**1.** In light of the dismissal of Mrs. Elsberry as a plaintiff in this lawsuit, the term plaintiff as used in the text of the Court's opinion refers to Mr. Elsberry. Also, in light of the dismissal of Rich-

ard B. Cheney and the United States of America as defendants, the term defendant as used in the text of the Court's opinion refers to Donald B. Rice, Secretary of the Air Force.

position as manager of the officers' club as a non-appropriated fund employee.[2]

On May 29, 1991, Mr. Elsberry was notified by the Air Force that his position as manager of the officers' club would be eliminated effective June 12, 1991, as part of a nationwide "self-sustainment plan" to restructure and consolidate all nonappropriated fund dining facilities at military installations. With respect to the Dover Air Force Base, the "self-sustainment plan" provided for the consolidation of the officers' club and the noncommissioned officers' open mess ("NCO club"). Prior to the implementation of the "self-sustainment plan," the officers' club and the NCO club had separate managers. Under the "self-sustainment plan," the position of officers' club manager and the position of NCO club manager were to be eliminated. Instead of two separate managers, the operations of both clubs were to be overseen by a joint manager, the so-called "installation club manager." Mr. Asbaugh, the Chief of Morale, Welfare, and Recreation, was assigned the task of selecting the installation club manager. Only two persons were considered by Mr. Asbaugh for this position, Mr. Elsberry, the manager of the officers' club, and Mr. David Griswold, the manager of the NCO club. Mr. Griswold, a younger white male was chosen for the position. Mr. Elsberry, whose position was eliminated, was then discharged on June 12, 1991.

On July 3, 1991, Mr. Elsberry filed a formal complaint with the Air Force Equal Employment Opportunity counselor ("EEOC counselor") alleging that he was discharged by virtue of his race and advanced age. (D.I. 13, Appendix ["App."] at 1–5.) On July 27, 1991, Mr. Elsberry received correspondence from the Air Force acknowledging receipt of Mr. Elsberry's complaint and explaining the Air Force's procedures for processing discrimination complaints. *Id.,* App. at 6.

Consistent with Air Force procedure, an investigation into the allegations of Mr. Els-

berry's complaint was conducted on October 24–25, 1991, by Angelina Srofe, the Air Force EEO complaint investigator assigned to the case. Thereafter, on November 26, 1991, Ms. Srofe issued a report detailing her findings and recommendations with respect to Mr. Elsberry's allegations of race and age discrimination. (D.I. 10 at 32–42.) In her report, Ms. Srofe found that Mr. Elsberry had established a *prima facie* case of discrimination based on age and race with respect to the Air Force's decisions to eliminate his position and to hire Mr. Griswold instead of Mr. Elsberry for the position of installation club manager. However, Ms. Srofe determined that the Air Force had proffered evidence of legitimate nondiscriminatory reasons for their decisions, and that Mr. Elsberry had failed to establish by a preponderance of the evidence that the Air Force's proffered reasons were merely a pretext for discrimination. Accordingly, Ms. Srofe recommended that Mr. Elsberry's request for relief be denied. (D.I. 10 at 41–42.)

Subsequently, by letter dated December 13, 1991, Colonel Doyle E. Brady of the United States Air Force, Commander of the 436th Support Group, notified Mr. Elsberry of Ms. Srofe's report and her recommendations. (D.I. 13 at 7.) The letter further advised Mr. Elsberry of his right to seek an informal adjustment of his complaint. In pertinent part, the letter states:

> Should you desire to meet with me to discuss an informal adjustment of your complaint, the meeting must take place no later than seven calendar days after receipt of this letter, as required by AFR 40–1613 paragraphs 2–9(a) and (b). Please contact the Chief EEO Counselor and advise her of your decision in this matter....

*Id.* at 7.

Plaintiff mistakenly interpreted the December 13, 1991 letter as the Air Force's final agency decision on his complaint and

---

**2.** According to Mr. Elsberry's supervisor, Mr. John D. Asbaugh, the Chief of Morale, Welfare, and Recreation of the 436th Combat Support Group at the Dover Air Force Base, Mr. Elsberry's retirement from the civil service was mutually beneficial to Mr. Elsberry and the Air Force. Upon his retirement from civil service employ-

ment, Mr. Elsberry received a civil service pension in addition to his military service pension. The Air Force was then able to compensate Mr. Elsberry with a lesser salary and benefits package as a non-appropriated fund employee. (D.I. 10 at 9–10.)

thereafter, on December 17, 1991, plaintiff sent a notice of appeal with the Equal Employment Opportunity Commission ("EEOC") Office of Review and Appeals. *Id.* at 8–9. By letter dated December 30, 1991, the EEOC Office of Review and Appeals informed Mr. Elsberry that his appeal had been received on December 24, 1991 and docketed. *Id.* at 10. On December 31, 1991, Air Force Colonel Doyle E. Brady sent yet another letter to Mr. Elsberry informing him of the Air Force's "proposed disposition" of Mr. Elsberry's complaint. (D.I. 10 at 43.) Colonel Brady's letter explained that after review of Ms. Srofe's report, the Air Force proposed to deny the remedies requested. In addition, Colonel Brady's letter informed Mr. Elsberry of his right to request an administrative hearing with respect to his complaint. *Id.* On January 13, 1992, Mr. Elsberry entered a formal request for an administrative hearing. (D.I. 16 at C–1.) The plaintiff and the defendant sharply disagree over precisely what happened following the docketing of Mr. Elsberry's first appeal with the EEOC Office of Review and Appeals.

The defendant contends that Mr. Elsberry received a letter from the EEOC Office of Review and Appeals dated February 26, 1992, informing him that his appeal was premature and that he would be permitted to file a new appeal after a final decision was made by the Air Force in his case. In support of his contention, defendant proffered a copy of the February 26, 1992 letter in his supplemental appendix to his reply brief. *Id.* In addition, defendant has moved to amend his supplemental appendix to include the affidavit of Mr. Kenneth Morgan, Intake Officer of the Compliance and Control Division for the Office of Federal Operations of the EEOC. (D.I. 20.) Accompanying Mr. Morgan's affidavit is a copy of the certified mail receipt for the February 26, 1992 letter demonstrating that Mr. Elsberry received that letter on March 2, 1992. *Id.* The attached copy of the certified mail receipt has Mr. Elsberry's address and appears to bear

his signature and a stamp indicating that delivery was made on March 2, 1992. *Id.* In his affidavit, Mr. Morgan attests that as custodian of the files of the EEOC Office of Review and Appeals, the copy of the certified mail receipt represents a true and accurate copy. *Id.*[3]

Mr. Elsberry contends that he never received the February 26, 1992 letter from the EEOC Office of Review and Appeals, and therefore, was not apprised of the fact that his first appeal to the EEOC Office of Review and Appeals was premature. In support of his position, Mr. Elsberry offered his own affidavit, which states, in pertinent part:

1. I, Willie Elsberry, Jr., never received a copy of the document dated February 26, 1992, on EEOC letterhead which was submitted by defendants' [sic] as supplemental appendix page C–1, in their Reply Brief filed with this court on March 26, 199[3].

2. I, at no time until the receipt of [d]efendants' Reply Brief filed in the above-captioned action on March 26, 1993, had any knowledge that my appeal docketed with the EEOC in Washington, D.C. was alleged to be untimely filed or in any way invalid.

3. My request for a hearing dated January 13, 1992, and submitted in defendants' Reply Brief as supplemental appendix page C–2 was executed by me, as a *pro se* party, with the express understanding that said request in no way interfered with, invalidated, or constituted a waiver of the appeal that was pending before the EEOC at that time. Said understanding was in line with the Dover Air Force Base EEO counselor's July 29, 1991, letter of instruction which stated that I had the right to proceed with an administrative hearing during the pendency of my appeal.

(D.I. 19.)

On June 24, 1992, a mere eight days before the scheduled date of the Air Force administrative hearing on Mr. Elsberry's complaint, Mr. Elsberry, through his counsel, Valerie E.

---

3. At the oral argument on April 29, 1993, plaintiff objected to the form of Mr. Morgan's affidavit and its late introduction on April 23, 1991, after the defendant had filed his opening brief and the plaintiff had filed his answering brief. Because the Court finds that the question of whether or not Mr. Elsberry received the February 26, 1992 letter from the EEOC Office of Review and Appeals is irrelevant to the present motion, the Court need not rule on plaintiff's objections.

Fox, Esq. voluntarily withdrew his January 13, 1992 request for an administrative hearing.

On September 11, 1992, well over a year after Mr. Elsberry had filed his initial complaint with the Air Force on July 3, 1991, the Air Force dispatched its final agency decision to Mr. Elsberry, which he received on September 15, 1992. (D.I. 10 at 46–58.) In its final agency decision, the Air Force determined that Mr. Elsberry had not been discriminated against on the basis of race, nor on the basis of age, when the Air Force eliminated his position as manager of the officers' club and selected Mr. Griswold for the new position of installation club manager. The cover letter accompanying the Air Force's final decision stated:

> Attached to this notice is the final decision of the Air Force on your July 3, 1991, complaint of discrimination. This decision is final in the Air Force discrimination complaint procedure. However, if you are dissatisfied with this decision, you have the following appeal rights:
>
> An appeal may be filed with the Equal Employment Opportunity Commission within *20 calendar days* of receipt of this decision. The *20–day* period for filing an appeal begins on the day after the date of receipt of this decision. The appeal must be postmarked or, in the absence of a postmark, received by the Commission within *20 calendar days* of the date of receipt of this decision. Statements or briefs in support of the appeal may be submitted up to *30 calendar days* from the date the appeal is filed. The regulation providing for appeal rights is contained in Title 29 of the Code of Federal Regulations, a copy of which is reproduced below. . . .

*Id.* at 46–47.

On October 2, 1992, plaintiff, by and through his attorney Valerie Fox, Esq., filed a second notice of appeal with the EEOC Office of Review and Appeals contesting the Air Force's final decision. *Id.* at 58. On October 30, 1992, plaintiff, through his attorney, Valerie Fox, Esq., formally withdrew his second appeal with the EEOC Office of Review and Appeals, and filed the present civil action in this Court. *Id.* at 59.

## III. DISCUSSION

The thrust of the government's motion to dismiss is that plaintiff failed to exhaust his administrative remedies before filing suit in this Court. Analysis of both plaintiff's Title VII claim and ADEA claim supports the government's position.

### A. PLAINTIFF'S FAILURE TO EXHAUST HIS ADMINISTRATIVE REMEDIES WITH RESPECT TO HIS TITLE VII CLAIM

Under section 717(c) of Title VII of the Civil Rights Act of 1964, as amended, a federal employee may file a civil action in district court against the head of the agency alleged to have discriminated against him only: (1) within 90 days after the employee's receipt of notice of the agency's final decision; or (2) within 90 days of employee's receipt of notice of the EEOC's final action if an appeal from the agency's final decision has been taken to the EEOC; or (3) after 180 days have elapsed since the employee filed his initial charge with the agency and no final agency decision has been rendered; or (4) after 180 days have elapsed since the employee filed his appeal of the agency's final decision to the EEOC and the EEOC has not rendered a final decision. 42 U.S.C. § 2000e–16(c).[4]

In the present case, the plaintiff filed two appeals to the EEOC Office of Review and Appeals. The first appeal was filed on December 17, 1991, in response to a December 13, 1991 letter from Colonel Brady informing

---

4. In 1991, Congress amended section 717(c) of Title VII of the Civil Rights Act of 1964. The amendment changed the time period within which an aggrieved federal employee may file a civil action from within 30 days of receipt of notice of the agency's final decision to within 90 days of such notice. This amendment became effective on November 21, 1991. Because the conduct giving rise to plaintiff's claim occurred on May 29, 1991, prior to the effective date of the amendment, the question arises as to whether the 30–day limitations period or the 90–day limitations period applies. Because the Court finds that the plaintiff failed to exhaust his administrative remedies, the Court need not address this question.

plaintiff of the report and recommendations of the Air Force EEOC Complaint Investigator, Ms. Srofe. That first appeal to the EEOC Office of Review and Appeal was premature under the EEOC regulations because the Air Force had not reached its final decision. Title 29 of the Code of Federal Regulations, section 231 governs appeals to the EEOC from agency decisions. In pertinent part, that section explicitly states:

> A complainant may not appeal under this subsection, however, when the matter initially raised in the negotiated grievance procedure is still ongoing in that process.... Any appeal prematurely filed in such circumstances shall be dismissed without prejudice.

29 C.F.R. § 1613.231.

At the oral argument held on April 29, 1993, both the plaintiff and the defendant placed considerable weight upon the question of whether plaintiff did in fact receive the February 26, 1992 letter from the EEOC Office of Review and Appeals notifying plaintiff that his first appeal was premature. The parties assumed that if plaintiff did not receive the February 26, 1992 letter his first appeal to the EEOC remained dormant for a period in excess of 180 days, and thus, section 717(c) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–16(c), affords plaintiff a proper basis for maintaining this civil action.

 The question of whether or not plaintiff received the February 26, 1992 letter is a red herring. Plaintiff's first appeal was premature because Colonel Brady's December 13, 1991 letter was not a final agency decision. Even assuming plaintiff did not receive the February 26th letter, that fact does not alter the conclusion that plaintiff's first appeal was premature. Colonel Brady's December 13th letter, which plaintiff erroneously interpreted as a final decision and which prompted plaintiff's first appeal, is not magically converted into an appealable final agency decision by virtue of plaintiff's contention

that he did not receive notice from the EEOC that his first appeal was premature.[5] Accordingly, this Court need not address the factual question of whether or not Mr. Elsberry received the February 26, 1992 letter from the EEOC informing him that his appeal was premature.

 The relevant conduct which must be considered in determining whether the plaintiff exhausted his administrative remedies is plaintiff's filing of a second appeal to the EEOC Office of Review and Appeal on October 2, 1992, and his subsequent withdrawal of that appeal on October 30, 1992. When plaintiff filed his second appeal with the EEOC on October 2, 1992, plaintiff was represented by counsel, Ms. Valerie Fox, Esq., and was no longer proceeding *pro se*. This decision to file a second administrative appeal can only be viewed as a tactical move by counsel, learned in the law, and fully aware of the consequences of this decision. At the time plaintiff filed his second appeal on October 2, 1992, he possessed the option, at least with respect to his Title VII claim, of bypassing the administrative process and immediately filing suit in federal district court. Plaintiff did not elect to file suit in federal court. Instead, plaintiff chose to appeal the Air Force's final decision entered on September 11, 1992, to the EEOC, and thus, filed a second appeal to the EEOC Office of Review and Appeals. Under section 717(c) of Title VII, plaintiff cannot file a civil action in federal district court before the EEOC has made a final ruling on his appeal unless more than 180 days have elapsed since the date plaintiff filed his appeal. In the present case, plaintiff filed his appeal with the EEOC Office of Review and Appeals on October 2, 1992, and after a scant 28 days, on October 30, 1992, plaintiff grew impatient and filed this civil action. Since not more than 180 days have elapsed since plaintiff's appeal to the EEOC Office of Review and Appeals, the statutory condition precedent for this Court's exercise of jurisdiction over plaintiff's Title VII claim has not been satisfied. According-

---

5. Moreover, even if Mr. Elsberry did not receive the February 26, 1992 letter from the EEOC Office of Review and Appeals, both Mr. Elsberry and his attorney should have known that plaintiff's first appeal was premature when the Air

Force rendered its final agency decision on September 11, 1992. Plaintiff filed this civil action on October 30, 1992, well over a month after receiving the Air Force's final decision.

ly, plaintiff's Title VII claim is premature and will be dismissed without prejudice.[6]

## B. PLAINTIFF'S FAILURE TO EXHAUST HIS ADMINISTRATIVE REMEDIES WITH RESPECT TO HIS ADEA CLAIM

■ Under the ADEA, a federal employee has two alternative routes for pursuing a claim of age discrimination. He "may invoke the EEOC's administrative process and then file a civil action in federal district court if he is not satisfied with his administrative remedies. *See* 29 U.S.C. § 633a(b) and (c)." *Stevens v. Department of Treasury,* —— U.S. ——, ——, 111 S.Ct. 1562, 1566, 114 L.Ed.2d 1 (1991). Alternatively, "[h]e can decide to present the merits of his claim to a federal court in the first instance. *See* 29 U.S.C. § 633a(d)." *Id.* If the federal employee elects to proceed in federal court in the first instance, he must give notice to the EEOC of his intent to sue. Notice of intent to sue must: (1) be filed with the EEOC within 180 days of the alleged discriminatory conduct for which relief is sought; and (2) be filed not less than thirty days before the commencement of the suit. *Id.; see* 29 U.S.C. § 633a(d). On the other hand, if the federal employee elects to pursue his administrative remedies and thereafter files a civil action in district court, there is no requirement, statutory or otherwise, that the employee file a notice of intent to sue with the EEOC.

■ In the present case, plaintiff decided to pursue his administrative remedies with respect to both his Title VII and ADEA claims. Unlike section 717(c) of Title VII which permits a complainant to proceed to federal district court 180 days after filing an initial charge if a final decision has not been reached by the agency, the ADEA contains no such a provision. As explained above, plaintiff's decision was knowing and intelligent and made with the assistance of counsel.

Once plaintiff elected to pursue his administrative remedies under the ADEA by filing his second appeal to the EEOC, the law in this Circuit requires plaintiff to exhaust his administrative remedies and does not permit him to abandon those remedies mid-stream in search of relief in federal district court. *Purtill v. Harris,* 658 F.2d 134, 138 (3d Cir. 1981), *cert. denied,* 462 U.S. 1131, 103 S.Ct. 3110, 77 L.Ed.2d 1365 (1983); *see also Wrenn v. Secretary, Dept. of Veterans Affairs,* 918 F.2d at 1078. In *Purtill,* the United States Court of Appeals for the Third Circuit explained the rationale behind the requirement that a plaintiff exhaust his administrative remedies:

> Allowing a plaintiff to abandon the administrative remedies he has initiated would tend to frustrate the ability of the agency to deal with complaints. All participants would know that at any moment an impatient complainant could take his claim to court and abort the administrative proceedings. Moreover, such a course would unnecessarily burden courts with cases that otherwise might be terminated successfully by mediation and conciliation. Absent an indication of contrary congressional intent, we will not countenance circumventing the administrative process in this manner.

*Id.* In *Purtill,* the plaintiff-appellant filed two complaints with the Department of Health and Human Services alleging age discrimination in violation of the ADEA. Before the agency had made its final decision on his complaints, the plaintiff-appellant filed suit in federal district court. The Court of Appeals affirmed the district court's dismissal of the plaintiff-appellant's two ADEA claims on the grounds of failure to exhaust administrative remedies. *Id.* *Purtill* is controlling and accordingly, plaintiff's ADEA claim will be dismissed without prejudice.

---

**6.** The fact that plaintiff withdrew his appeal to the EEOC on October 30, 1992, the same day that he filed this civil action, does not alter this conclusion. As explained in the text, *infra* at 16–17, once a party has made a decision to pursue his administrative remedies, whether under Title VII or the ADEA, he may not abort his administrative remedies before their culmination. Instead, that party must exhaust his administrative remedies until a final decision is rendered. If that decision is unfavorable, then suit may be brought in federal district court. *Wrenn v. Secretary, Department of Veterans Affairs,* 918 F.2d 1073, 1077–78 (2d Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1625, 113 L.Ed.2d 721 (1991).

## IV. CONCLUSION

For the foregoing reasons, plaintiff's Title VII claim and ADEA claim will be dismissed without prejudice. An order consistent with this opinion shall issue forthwith.