**Richard C. ROTH, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner Social Security Administration, Defendant.**

**No. Civ.A. 97–30045–MAP.**

United States District Court,
D. Massachusetts.

Sept. 28, 1999.

Edward B. Fogarty, Springfield, MA, for Richard C. Roth, plaintiff.

Karen L. Goodwin, United States Attorney's Office, Springfield, MA, for Kenneth

S. Apfel, Commissioner, Social Security Administration, defendant.

### MEMORANDUM REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

PONSOR, District Judge.

## I. INTRODUCTION

Plaintiff in this Title VII case claims that he was improperly denied a job by the defendant Commissioner of the Social Security Administration ("SSA") based on his gender. Defendant has moved for summary judgment due to plaintiff's purported refusal to accept a full offer of relief. For the reasons set forth below, the motion will be denied.

## II. PROCEDURAL AND FACTUAL BACKGROUND

Few, if any, facts in this case are in dispute. To the extent that conflicts may be found to exist, the court will, of course, view the facts in the light most favorable to the plaintiff, as Fed.R.Civ.P. 56 requires.

This case and the defendant's Motion for Summary Judgment require the court to sort out the tangle that can result when a lengthy, complicated administrative process becomes entwined with an unfolding human life. The web was woven as follows.

In May of 1976 the plaintiff began working for the SSA. Eventually he worked as the Operations Supervisor in the SSA's Holyoke office as a GS–12 employee. Although he had been a reasonably satisfied worker, by 1989 he was increasingly unhappy with his working conditions, which were marred by the gross misconduct of his two immediate supervisors.

Partly because of this unhappiness, he decided to begin attending law school at night. He succeeded in obtaining his law degree in May 1993, and in April 1994 he applied for an attorney position in the SSA's Office of Hearings and Appeals in Springfield, Massachusetts. Although the new job would have paid the same as his existing non-attorney position, he pursued the opportunity because it would get him out of the Holyoke office and offered him a greater chance for advancement. The appointment, had he received it, would have been for two years, beginning in August 1994.

In June 1994 his application for the attorney position was rejected based on impermissible considerations of gender. He was told he was qualified, and in fact provisionally selected, but later learned that the SSA would make an offer only to a female.

In August 1994 he initiated the administrative appeals process by meeting with an SSA in-house counselor. This got him nowhere, and in September 1994 he filed a formal administrative complaint, seeking placement in the attorney position. The process at this stage gave the SSA six months to investigate his complaint.

Meanwhile, plaintiff was more and more offended by the misconduct of his Holyoke supervisors. This included racist and anti-Semitic comments, secret monitoring of personal calls, intoxication, and verbal abuse. In October 1994 plaintiff decided to take advantage of the SSA's Voluntary Incentive Program and accept early retirement. After receiving approval, he submitted a letter of resignation effective January 20, 1995. Following his departure from the SSA, he began setting up his own law practice.

At this time, while the SSA investigation was pending, plaintiff informed the defendant that he was no longer seeking the attorney position. Instead, he claimed monetary damages comprising the difference between the salary he would have received in the SSA attorney position and what he was making in his nascent law practice. Later, the damage claim was increased.

In October 1995 the SSA made what it considered a full offer of relief, proposing

plaintiff now be placed in the SSA attorney position he originally applied for back in April 1994, and compensated for the difference in pay, if any, from August 1994 when he should have entered the position.

Plaintiff, having moved on with his life during the eighteen months intervening, declined the offer, being engaged by this time in his private law practice. He insisted, however, that he was entitled to monetary damages to compensate him, at a minimum, for the difference between the pay he would have received if the SSA had given him the two-year attorney position when it should have, and the lesser amount he netted from his law practice during the same period.

Based on what it perceived as the plaintiff's rejection of its full offer of relief, the SSA dismissed his complaint administratively. Plaintiff appealed to the Equal Employment Opportunity Commission ("EEOC"), which proceeded to compound the confusion.

The EEOC determined, after hearings, that defendant's dismissal of plaintiff's complaint should be vacated. It observed that "there appears to be a miscommunication regarding the agency's offer." (Docket No. 29, Exhibit 12, at 3). Given his law practice, the plaintiff (the EEOC noted) no longer wished "to be physically placed into the GS–12 position for which he was previously not selected." *Id.* at 4. It concluded, therefore, that the SSA should give plaintiff a "paper" appointment—a fiction—extending from the date it found he *should* have received the attorney position but for the discrimination, August 7, 1994, to the date he left his non-attorney position with the SSA in January 1995, when (the EEOC apparently presumed) he would have left the attorney position if he had received it.

In retrospect, it is hard to discern why the EEOC made this determination. True, the change adjusted the paperwork to make it look as though plaintiff perhaps suffered no harm. On the books, it would appear that plaintiff got his new job when he should have in the first place, and was simply removed from the SSA's payroll when he resigned. To the plaintiff, however, the supposed remedy provided exactly nothing. He got no back pay because his non-attorney position paid the same as the attorney position would have, so in the agency's eyes he was not financially harmed by the SSA's misconduct.

On remand from the EEOC, the SSA duly made plaintiff an offer fully in compliance with the EEOC's suggestion, placing plaintiff in the "paper" position from August up to January 1995. However, as noted, since plaintiff was already employed during the same period with the SSA, and receiving precisely the same salary he would have earned as an attorney, the SSA did not include any award of back pay with its offer of relief.

Plaintiff then filed this lawsuit, and defendant moved for summary judgment based on plaintiff's rejection of its full offer of relief.

Plaintiff now argues that he is entitled at a minimum to the opportunity to argue to the jury that, had he received the appointment to the attorney position with the SSA in a timely manner, he would never have resigned from SSA employment and would, at a minimum, have earned the SSA salary over the full two years of his prospective employment term, that is, from August 1994 through August 1996. He contends that he is entitled at least to the difference between this SSA salary and the lesser amount he earned during that period from his new law practice. In contrast, defendant argues that it is entitled to judgment in its favor based on plaintiff's failure to accept its full offer of relief.

### III. DISCUSSION

Citing a line of cases best exemplified by *Wrenn v. Secretary, Department of Veterans Affairs,* 918 F.2d 1073 (2d Cir.1990), defendant has moved for summary judgment on the ground that plaintiff's claim is

barred because of his rejection of defendant's offer of full relief.

■ Defendant is correct that Title VII establishes an administrative procedure which a complaining employee must follow as a prerequisite to a lawsuit in federal court. When, during the administrative process, the agency offers the complaining party full relief to "make whole" an employee who has been discriminated against, the agency shall dismiss the complaint if the employee fails to accept the offer of full relief in settlement. *See* 29 C.F.R. § 1614.107(h) (1998); *Briley v. Carlin*, 172 F.3d 567, 572 (8th Cir.1999). *See also Fitzgerald v. Secretary, United States Department of Veterans Affairs*, 121 F.3d 203, 208–09 (5th Cir.1997); *Askew v. Stone*, 81 F.3d 160, 1996 WL 135024, at *4 (6th Cir.1996) (unpublished disposition).

In *Wrenn*, the Court of Appeals held that "there were no issues of triable fact concerning whether [plaintiff] refused an offer of full relief...." 918 F.2d at 1077. The defendant offered Wrenn precisely the clerk-typist position he had applied for, along with back pay and seniority. Wrenn's response was a "counter-proposal" demanding an entirely different position and additional relief. Observing that "litigation is not a sport in which the hunter may release a trapped quarry for the thrill of further chase," the Second Circuit found the rejection of the full offer of relief fatal to plaintiff's Title VII claim. *Id.* at 1078–79 (footnote omitted).

■ The Ninth Circuit has expressed reservations about the "bright line jurisdictional litmus test" *Wrenn* and other appellate decisions have established, especially when the case involves "circumstances where an offer might be less clear cut...." *Greenlaw v. Garrett*, 59 F.3d 994, 997–98 (9th Cir.1995). It is not necessary in this instance to enter into discussions of general policy since, in this case, unlike *Wrenn*, issues of triable fact *do* exist concerning whether Roth refused an offer of full relief.

Here, defendant's offer of relief only covered the period from August 1994, when plaintiff should have been given the SSA attorney position, to January 20, 1995, when he resigned from the entirely separate, non-attorney position for reasons peculiar to that job. In other words, the defendant's five-month, "paper" offer conclusively presumed that, had plaintiff been given the *attorney* position, he would have left that job at the time he resigned from the *non-attorney* position. This is a dubious assumption on its face. More importantly, the facts contained in the record might well persuade a factfinder that plaintiff resigned from the non-attorney position because of the unpleasant working conditions in Holyoke and would have, at a minimum, served out the full two-year term in the attorney position in Springfield, had it been properly offered to him. Having made this factual finding, a jury could conclude that defendant failed to make an offer of "full relief."

Defendant has misconstrued plaintiff's argument, regarding the lack of any fair offer of relief, as an assertion of a "constructive discharge" claim related to his departure from the non-attorney position in Holyoke. Plaintiff makes no such claim. His contention is that, if he had not been the victim of discrimination, he would have accepted the attorney position in Springfield and served out the two-year term, at least. His citation of evidence showing the misconduct of his supervisors in Holyoke is merely offered to rebut the Government's suggestion that he necessarily would have left the attorney position in Springfield at the same time that, it turned out, he left the separate non-attorney position in Holyoke.

In sum, while it may be true as a matter of law that the rejection of a full offer of relief requires dismissal of a claim under Title VII, the state of the record as a matter of fact does not permit the court to say, beyond dispute, that defendant did actually make an offer of *full* relief.

## IV. *CONCLUSION*

For the foregoing reasons, defendant's Motion for Summary Judgment will be denied.