**Nick MATHIS, Plaintiff,**

v.

**CORPORATION FOR NATIONAL AND COMMUNITY SERVICE, Leslie Lenkowsky, and Romero Cherry, Defendants.**

**No. 3:03CV771(JBA).**

United States District Court, D. Connecticut.

July 27, 2004.

---

Francis A. Miniter, Miniter & Associates, Hartford, CT, for Plaintiff.

William M. Brown, Jr., U.S. Attorney's Office, New Haven, CT, for Defendants.

### Ruling on Defendants' Motion for Judgment on the Pleadings, or Alternatively, for Summary Judgment [Doc. # 17]

ARTERTON, District Judge.

Plaintiff Nick Mathis' amended complaint [Doc. # 16] alleges five causes of action, claiming defendants discriminated against her because of her race, gender, and age, and retaliated against her because of her complaints of discrimination, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et. seq. ("ADEA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq., and the Due Process and Equal Protection Clauses of the Fifth Amendment to the United States Constitution. Specifically plaintiff alleges she was forced to work in a hostile work environment, was subjected to unnecessary micro-managing of her work, and was suspended on three occasions (September 1997, April 1998, and November 1998). Because Mathis' constitutional claims merely restate verbatim her Title VII and ADEA claims, compare Am. Compl. [Doc. # 16] at ¶¶ 17–18 (first set), 19 with id. at ¶¶ 17–18 (second set), 20, they are dismissed pursuant to Fed. R.Civ.P. 12(c) as the exclusive remedy for the forms of federal employment discrimination of which Mathis complains are Title VII, see Brown v. Gen. Serv. Admin., 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), and ADEA, see Tapia–Tapia v. Potter, 322 F.3d 742, 745 (1st Cir.2003) (agreeing with decisions of the Fourth, Fifth, and D.C. Circuit Courts of Appeal).[1] With respect to Mathis' three remaining Title VII and ADEA claims, however, the Court rejects defendants' view that Mathis failed to exhaust her administrative remedies because she filed an untimely appeal to the Equal Employment Opportunity Commission ("EEOC"), notwithstanding that her civil action was timely begun. Accordingly, defendants' motion [Doc. # 17] is GRANTED in PART and DENIED in PART.

### I. Undisputed Facts[2]

Mathis was temporarily suspended from her employment with defendant Corporation for National and Community Service ("CNCS") on three occasions during 1997 and 1998, September 23–24, 1997, April 28–30, 1998, and November 10–23, 1998. She was terminated on April 17, 2001. In connection with the three suspensions, Mathis filed three discrimination complaints with CNCS. On May 7, 2001, CNCS consolidated Mathis' complaints as one case with docket number 04–01–001R. On June 1, 2001, Mathis requested amendment of her discrimination complaint in the consolidated case to add her termination to the three suspensions. The re-

---

1. The Court is unaware of any Circuit Court of Appeal taking a contrary position to that of the First, Fourth, Fifth, and D.C. Circuits.

2. Because defendants' exhaustion of administrative remedies argument relies heavily on evidentiary material beyond Mathis' amended complaint, the Court considers it part of defendants' alternative motion for summary judgment. In opposition, Mathis' moving papers contain no evidentiary material and her factual assertions in briefing are unsupported by affidavits or documentation.

quest was formally accepted on June 6, 2001.

On July 18, 2002, CNCS issued a Final Agency Decision ("FAD") on 04–01–001R, finding that Mathis failed to satisfy her burden of proof to establish by a preponderance of the evidence that any of CNCS' four actions (termination and three suspensions) were the result of race, color, gender, or age discrimination or retaliation for use of the discrimination complaint process. Mathis appealed CNCS' decision to the U.S. Merit Systems Protection Board ("MSPB"). On October 31, 2002, the MSPB dismissed for lack of jurisdiction the appeal as it related to Mathis' three suspensions, ordering CNCS pursuant to 29 C.F.R. § 1614.109(f) to notify Mathis of her right to request a hearing and decision from an EEOC administrative judge or an immediate final decision from CNCS. The case was re-docketed as 04–01–001R–X and, on January 30, 2003, CNCS issued a second FAD finding that Mathis had failed to establish that any of the three suspensions resulted from race, color, gender, or age discrimination or retaliation for use of the discrimination complaint process. Consistent with 29 C.F.R. §§ 1614.402(a), (b), and 1614.407(a); 42 U.S.C. § 2000e–16(c), this FAD clearly stated that an appeal could be filed with the EEOC within 30 days of Mathis' attorney's receipt of the FAD or that Mathis could elect not to file an appeal to the EEOC and instead file a civil action in federal court within 90 days of her receipt of the FAD. The FAD also included information on how to file an appeal to the EEOC, including the di-

rective that the appeal be filed using EEOC Form 573 and the requirement set forth in 29 C.F.R. § 1614.403(a) that any appeal be filed with the Office of Federal Operations ("OFO"). The January 30 FAD was delivered to Mathis' attorney's office on January 31, 2003, and to Mathis by February 3, 2003.[3]

On March 26, 2003, Mathis filed an appeal with the OFO, including EEOC Form 573 and a copy of the January 30 FAD. *See* Mem. in Supp. [Doc. # 18] Exs. 1, 9; Reply [Doc. # 24] Ex. A.[4] On May 1, 2003, Mathis filed the instant action. On March 29, 2004, the EEOC dismissed Mathis' appeal pursuant to 29 C.F.R. § 1614.403(c) as untimely filed in excess of thirty days after Mathis' attorney's receipt of the January 30 FAD pursuant. *See* Mot. [Doc. # 25] Ex. A.[5]

## II. Discussion

The Government contends that Mathis' failure to timely appeal the January 30 FAD to the EEOC constitutes a failure to exhaust administrative remedies and therefore requires dismissal of her Title VII and ADEA claims notwithstanding that Mathis' civil action was filed within the 90–day time period permitted for filing an action in federal district court after receipt of an FAD. The Court disagrees and holds that an untimely appeal to the EEOC under 29 C.F.R. § 1614.402 does not constitute an effective election between an EEOC appeal and a federal civil action such that a subsequent timely filed federal

---

**3.** Mathis concedes receipt of the January 30 FAD by "on or about Monday, February 3, 2003." Am. Compl. [Doc. # 16] ¶ 16.

**4.** Mathis' attempt to characterize the appeal to the OFO as merely a reconsideration motion of the January 30 FAD is belied by, among other things, the fact that it was filed with the OFO in accordance with regulatory

appeal procedure and not with CNCS, the agency that issued the FAD, and that the appeal included a completed EEOC Form 573.

**5.** Although not submitted as part of the summary judgment record, the Court takes judicial notice of the fact of the EEOC's disposition of Mathis' appeal.

action must be dismissed for failure to exhaust administrative remedies.

The regulatory scheme applicable to Mathis' Title VII and ADEA discrimination complaints requires appeals from an FAD to the EEOC to be filed within 30 days of the complainant's receipt of the FAD or within 30 days of the complainant's attorney's receipt of the FAD, see 29 C.F.R. § 1614.402(a), (b), mandates dismissal of an EEOC appeal as untimely if the thirty day time limit is exceeded, see id. at 1614.403(c), permits a complainant to elect to pursue a federal civil action in the event no appeal to the EEOC has been filed if the action is filed within 90 days of the complainant's receipt of the FAD, see id. at 1614.407(a), and, if an appeal to the EEOC is elected, also allows a federal civil action to be filed within 90 days of the complainant's receipt of the EEOC's final decision, see id. at 1614.407(c). The ninety day components of this scheme track those provided for by statute for federal employee claims of race, color, religion, sex or national origin discrimination. See 42 U.S.C. § 2000e–16(c). While Mathis' appeal of CNCS' January 30 FAD was untimely, having been filed with the OFO 54 days after Mathis' attorney's receipt of the FAD, her present action was filed within ninety days of such receipt, as conceded by defendants, see Reply [Doc. # 24] at 4. Thus, had Mathis never filed the EEOC appeal, there would be no question that the present action could proceed. The critical question on which the present motion turns therefore is whether Mathis' untimely appeal constituted an effective election of an appeal to the EEOC such that exhaustion of that appeal was required before the present suit could be filed.

The parties have not cited the Court to any case with this fact pattern—untimely appeal of an FAD to the EEOC followed by timely filing of federal civil action. The Government has directed the Court to Jenkins v. Potter, 271 F.Supp.2d 557, 562–63 (S.D.N.Y.2003), which held that a federal civil action filed more than 90 days after the receipt of an FAD but within 90 days of receipt of an EEOC ruling dismissing the appeal of the FAD as untimely must be dismissed for failure to exhaust administrative remedies. Jenkins grandparent, Demesme v. Frank, 753 F.Supp. 187, 189 (E.D.La.1990), explains this result as based in a policy of preventing dilatory conduct of a dissatisfied federal employee to circumvent congressionally mandated administrative procedures by filing an untimely EEOC appeal, waiting past the 90 day (then 30 day) federal court election period for EEOC's rejection of the untimely appeal, and then filing in district court. Similarly, in M. Van Uitert v. Henderson, No. CIV. 99–1021–AS, 2000 WL 776397 (June 13, 2000 D.Or.2000), the district court reached the same result with a slightly different rationale, holding that the untimely appeal of an FAD to the EEOC has no effect on the finality of the FAD and thus the only remaining course of action lies in filing a federal civil action prior to expiration of 90 days following receipt of the FAD: "The fact that Plaintiff filed an appeal with the OFO did not toll Plaintiff's obligation to file in this court. The appeal was untimely and, therefore, is treated as though it was never filed." Id. at 4. M. Van Uitert makes explicit what is only implicit in Jenkins and Demesme—— that filing an untimely appeal to the EEOC does not relieve the complainant of the burden to timely file in district court, which, if done, would not run afoul of the policy against dilatory conduct. Analogously, the Tenth Circuit has held a timely request for reconsideration of an EEOC decision on an appeal of an FAD tolls the 90–day deadline for filing suit in federal court but that an untimely request does not. See Belhomme v. Widnall, 127

F.3d 1214, 1216–17 (10th Cir.1997); *see also Holley v. Department of Veteran Affairs*, 165 F.3d 244, 246 (3rd Cir.1999) (timely filed request for reconsideration tolls 90–day deadline).

This Court concludes that an untimely appeal of a FAD to the EEOC under 29 C.F.R. § 1614.402 is, in effect, a non-event and does not constitute an effective election between an EEOC appeal and a federal civil action, and that a federal action commenced within 90 days of receipt of a FAD will not be dismissed for failure to exhaust administrative remedies. This holding does not encourage dilatory conduct or waste of administrative resources. Because all statutory and regulatory deadlines are enforced, no dilatory conduct is permitted. Because the EEOC appeal processing is terminated upon the federal court filing, *see* 29 C.F.R. § 1614.409, no administrative resources are unnecessarily expended.

This holding is not inconsistent with *Boos v. Runyon*, 201 F.3d 178 (2d Cir. 2000), holding that the regulatory/statutory scheme at issue in this case, 29 C.F.R. § 1614.407 and 42 U.S.C. § 2000e–16(c),

requires that the administrative EEOC appeal process, once begun, must be completed. *See Boos*, 201 F.3d at 181–84. *Boos* assumes timely filed appeals to the EEOC and timely filed requests for reconsideration of the EEOC's ruling on appeal, and therefore does not address the central question here, namely, identification of the moment the administrative process is "begun." [6]

## III. Conclusion

For the reasons set forth above, defendants motion [Doc. # 17] is GRANTED in PART and DENIED in PART.

IT IS SO ORDERED.

---

6. *Boos* also did not discuss the effect, if any, of 29 C.F.R. § 1614.409 (then 29 C.F.R. § 1614.410) on the exhaustion requirement. Earlier, in *Bornholdt v. Brady*, 869 F.2d 57, 63 (2d Cir.1989), not mentioned in *Boos*, the Second Circuit observed, albeit in dicta, that a regulation materially indistinguishable from 29 C.F.R. § 1614.409 eliminated any exhaustion requirement for the federal employee ADEA claimant even where administrative proceedings had been initiated. Because a federal ADEA claimant was (and is) permitted to sue for an ADEA violation without ever initiating administrative proceedings, *see* 29 U.S.C. § 633a(d), the Second Circuit reasoned that the regulation obviated the exhaustion requirement: "otherwise the claimant who pursues both avenues would find both automatically closed." *Id.* at 63. *Wrenn v. Department of Veterans Affairs*, 918 F.2d 1073,

1078 (2d Cir.1990), without mention of *Bornholdt*'s contradictory observation, held that a federal employee, having once begun the ADEA administrative process, is required to see it through before filing a civil action. The Second Circuit appears to continue to adhere to *Wrenn*, *see Economou v. Caldera*, 286 F.3d 144, 149 n. 8 (2d Cir.2002) (affirming *Wrenn* without discussion of intervening case law), notwithstanding *Stevens v. Department of Treasury*, 500 U.S. 1, 8–10, 111 S.Ct. 1562, 114 L.Ed.2d 1 (1991), which has resulted in disavowal of pre-*Stevens* holdings similar to *Wrenn* by other circuits. *See generally Bankston v. White*, 345 F.3d 768, 772–77 (9th Cir. 2003). For present purposes, it is enough to recognize that *Wrenn* and *Economou* are distinguishable on the same grounds as *Boos*, as none addressed untimely administrative proceedings.