Gladys M. ALLEN, Plaintiff,

v.

Togo D. WEST, Jr.,[1] Secretary
of the Army, Defendant.

Civ. A. No. 88–3384 SSH.

United States District Court,
District of Columbia.

Jan. 31, 1995.

1. Pursuant to Fed.R.Civ.P. 25(d), Togo D. West, Jr., as the current Secretary of the Army, is substituted as the defendant.

Edward H. Passman, Washington, DC, for plaintiff.

Asst. U.S. Atty. Michael Ambrosino, Washington, DC, for defendant.

*OPINION*

STANLEY S. HARRIS, District Judge.

This matter comes before the Court on plaintiff's and defendant's cross-motions for summary judgment. Upon consideration of the entire record, the Court grants defendant's motion for summary judgment and denies plaintiff's motion.

■ Summary judgment may be granted only if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). All evidence and the inferences to be drawn from it must be considered in a light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Summary judgment cannot be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Although "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56," the Court nonetheless sets forth its reasoning. Fed.R.Civ.P. ·52(a).

*Background*

Plaintiff, a 53–year–old black female, alleges that the Department of the Army ("Department") discriminated against her while she was employed as a Project Manager under the Federal Managers Financial Integrity Act ("FMFIA"). Before becoming Project Manager, plaintiff worked as a Systems Accountant for the Army Corps of Engineers in Washington, D.C., compensated at a GS–12 pay grade. On October 1, 1986, plaintiff was assigned the duties of Project Manager and continued to be compensated at the GS–12 level. At that time, the Project Manager duties had not been put into writing nor had the position officially been classified.

While in that position, plaintiff learned that the two white males who preceded her as Project Manager were compensated at the GS–13 level. On February 6, 1987, she consulted with an Equal Employment Opportunity ("EEO") counselor and filed an informal grievance with the Department, charging race, sex, and age discrimination.[2] She requested a temporary promotion to the GS–13 level that would apply retroactively to October 1, 1986, with backpay from that date.

■ On May 26, 1987, the Department responded with an informal offer which included: (1) a temporary promotion to the GS–13 level, retroactive to October 1, 1986, which would continue until the position was properly classified; (2) backpay from October 1, 1986, until the position was properly classified; and (3) submission of the duties and responsibilities of the position to the appropriate authorities for proper classification and assignment of the proper grade. Plaintiff did not accept this settlement because she did not believe the offer constituted "full relief."[3] Despite her refusal to accept the settlement, on May 26, 1987, the Department granted her the temporary promotion with backpay retroactive to October 1, 1986.[4]

Plaintiff then was transferred to Harry Diamond Labs ("HDL") in June 1987, and placed in a level GS–12 position. This position, though not with FMFIA, was still within the Department. On July 14, 1987, the Department notified plaintiff that her informal complaint had been dismissed. As a result, on July 20, she filed a formal EEO complaint, charging race, sex, and age discrimination, and requesting a retroactive promotion to the GS–13 level and an award of

---

**2.** In March 1987, while plaintiff was involved in the informal counselling process, the Army decided to move the branch which included plaintiff's position to Huntsville, Alabama. On March 25, 1987, plaintiff was advised of her right to retain her position after the move, but declined to transfer as she did not desire to relocate outside the Washington metropolitan area. It is undisputed that plaintiff's decision to decline the transfer was voluntary.

**3.** "Full relief" is all the relief to which one is legally entitled, not simply the relief which one requests. *Laudauto v. United States Postal Serv.*, 87 FEOR 1002, XI–3, EEOC No. 01861552 (1986).

**4.** In doing so, the Department did not admit to any finding of discrimination. Defendant's Exhibit 6.

attorney's fees and expenses.[5] On August 25, 1987, the U.S. Army Civilian Appellate Review Agency ("USACARA") notified the plaintiff that her EEO complaint had been accepted for processing in accordance with 29 C.F.R. § 1613.214. In a Final Army Decision ("FAD") issued on November 2, 1987, her complaint was cancelled for "failure to prosecute" because the remedies sought—a temporary promotion to GS–13 and an award of backpay—already had been granted in accordance with EEOCCRA Bulletin Volume IV, # 1, Section III A.[6]

On November 12, 1987, plaintiff appealed the Agency's FAD to the Equal Employment Opportunity Commission Office of Review and Appeals ("EEOC ORA"). On March 17, 1988, the EEOC ORA affirmed the decision, holding that "the agency had offered appellant complete relief" because there was no evidence that "she requested a permanent rather than a temporary promotion to GS–13." ORA Opinion at 2.

Plaintiff subsequently filed a request for the EEOC ORA to reopen and reconsider her complaint on April 16, 1988. On October 18, 1988, the EEOC ORA denied her request because her "voluntary" decision to transfer to HDL rendered her ineligible to receive any more relief, as she was no longer working at the position in dispute.

On November 21, 1988, plaintiff filed this action seeking to reopen her complaint on the grounds that she did not receive full relief. Plaintiff also disputed the voluntary nature of her decision to move to HDL, contending that she accepted the position

because she was informed that "if she declined the position [she] would be out of the DOD Priority Placement Program." Affidavit of Gladys M. Allen.

On May 6, 1991, the Court granted the Department's motion for summary judgment because "plaintiff was provided all of the relief she requested in her equal employment opportunity complaint." Order at 1 (filed May 6, 1991). On appeal, the Court of Appeals reversed and remanded the case for determination of whether plaintiff was granted "full relief" as defined by EEOC precedent. *Allen v. Stone*, 988 F.2d 1280 (D.C.Cir. 1993) (unpublished opinion). In addition to requesting a general determination of what constituted "full relief," the Court of Appeals highlighted two issues for consideration: (1) whether plaintiff deserved a permanent promotion to the GS–13 level; and (2) whether she voluntarily left her position as Project Manager.

Plaintiff now moves for summary judgment on the grounds that her formal discrimination complaint should be reinstated and that she is entitled to an award of attorney's fees and costs. Defendant moves for summary judgment on the grounds that the complaint was properly dismissed because plaintiff was granted full relief.

## Analysis

■ To determine whether defendant properly dismissed plaintiff's administrative complaint, the Court must first determine whether the informal settlement granted to plaintiff constituted "full relief."[7] Under

---

5. As indicated on the complaint form, plaintiff retained counsel to prosecute the formal complaint.

6. The EEOCCRA Bulletin states that agencies can cancel formal EEOC complaints for "failure to prosecute" where "full remedy is offered and the complainant rejects the offer or is satisfied with the offer, but wishes to continue processing of the complaint." The EEOC considers "a complainant's failure to engage in good faith attempts to resolve the complaint informally to be tantamount to a failure to prosecute." Volume IV, # 1, Section III A.

Similarly, under 29 C.F.R. § 1613.220(b), an agency can dismiss a plaintiff's complaint for "failure to prosecute" if plaintiff fails to accept an offer of "full relief" that plaintiff would re-

ceive if he prevailed on the merits. Under § 1613.215(a)(6), a complaint can be dismissed for failure to prosecute if the agency has provided the complainant with a written request to provide certain information or otherwise proceed with the complaint, including a notice of the proposed cancellation, and the complainant has failed to satisfy the request within 15 calendar days of receipt.

7. At the time this action was initially filed, the law controlling this issue was set forth in an EEOCCRA Bulletin provision which provided that complaints for which full relief had been offered could be cancelled. This was codified in 29 C.F.R. § 1613.215(a)(7), effective November 30, 1987, and is now found in 29 C.F.R. § 1614.107(h).

EEOC precedent, if the agency does not offer full relief, plaintiff is under no obligation to accept the offer. In that situation, the agency may not cancel a complaint for failure to prosecute. *See Laudauto v. United States Postal Serv.,* 87 FEOR 1002, at XI–3, EEOC No. 01861552 (1986).

■ It is well-settled that full relief must "make [the] person whole for injuries suffered on account of unlawful employment discrimination." *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975). "The injured party is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed." *Id.* at 418–419, 95 S.Ct. at 2372. An offer of full relief "must constitute a make-whole remedy; that is, the appellant must be offered all the relief to which he would be entitled if he prevailed on his complaint." *Laudauto,* 87 FEOR 1002, at XI–5. Under EEOC precedent, the remedy a plaintiff seeks is "a matter of law, which may be totally independent of any relief which the complainant may have initially sought in his complaint." *Ducay v. United States Postal Serv.,* 91 FEOR 3050, XII–620, EEOC No. 05900470 (1990). What a plaintiff actually asks for is irrelevant, for if he "prevail[ed] on his complaint, he w[ould] receive the relief to which he is legally entitled whether he requested it or not." *Laudauto,* 87 FEOR 1002, at XI–5.

■ Furthermore, an agency "must accept the allegations raised in the complaint as true, regardless of the merits of those allegations, and the relief to be proffered must be fashioned accordingly." [8] *Collick–Brown v. Department of the Navy,* 91 FEOR 3116, XII–804, 805, EEOC No. 05900642 (1990). In this case, if plaintiff was not granted all the relief to which she was legally entitled, assuming a finding of discrimination, her complaint must be reinstated.

1. *The Nature of the Promotion*

■ Plaintiff contends that the temporary promotion to the GS–13 level granted by the Department does not constitute full relief. Rather, plaintiff asserts that full relief requires a permanent promotion to the GS–13 level. Plaintiff's argument is without merit.

Plaintiff argues that since the two white men who previously held the Project Manager position on a permanent basis were compensated at the GS–13 level, she also deserved a promotion on a permanent basis. Her claim is misfounded. First, these two men differ from plaintiff in that they were promoted to the GS–13 level long before they were assigned the duties of Project Manager.[9] Thus, they simply carried the pay grade they previously earned with them to the Project Manager position.

Second, the position in dispute was previously unclassified, which the Department

---

Under 29 C.F.R. §§ 1613.215(a)(7) and 1614.107(h), a complaint may be cancelled if a complainant refuses an offer of settlement from an agency which is full relief in adjustment to the complaint, provided that the agency's Director of Equal Employment Opportunity, Chief Legal Officer, or designee reporting directly to the EEO Director or the Chief Legal Officer has certified in writing that the agency's written offer of relief constitutes full relief, and provided that the offer gave notice that failure to accept would result in dismissal of the complaint.

8. Similarly, EEOC regulations define "full relief" to include: (1) a commitment that corrective, curative or preventive action will be taken, or measures adopted, to ensure that violations of the law similar to those found will not recur; (2) an unconditional offer to each identified victim of discrimination of placement in the position the person would have occupied but for the discrimination suffered by that person, or a substantially equivalent position; and (3) a commitment that the agency shall cease from engaging in the

specific unlawful employment practice found in the case. 29 C.F.R. § 1614.501(a)(2), (3), and (5) respectively.

9. Ralph Payne was promoted to a GS–13 position on May 23, 1971, as a Systems Accountant and was first assigned FMFIA duties during Fiscal Year 1984. At the time of his initial promotion, it was generally believed in the Finance and Accounting Division that the FMFIA duties would not involve the time and responsibility of a full-time position. Initially, Payne spent no more than 10–12% of his time on FMFIA work, and simply considered it a special duty.

Verne Brandt was promoted to a GS–13 Systems Accountant in October 1984. He was first assigned FMFIA duties during the summer of 1985, and was assigned the task of full-time evaluator to monitor the program in October 1985. At no time were the duties of either of these men put in writing or incorporated into their job descriptions.

proposed to rectify in its settlement by offering to classify it. Although the Department ultimately chose to classify it as a GS–13 position, they could have classified the position at GS–12 and reduced the responsibilities of the position. *See Cayce v. Adams,* 439 F.Supp. 606, 609 n. 3 (D.D.C.1977); *see also Shamey v. Administrator, Gen. Serv. Admin.,* 732 F.Supp. 122, 129 (D.D.C.1990) (holding that if desk audit reveals employee is performing above designated GS-level, management retains right to reduce his duties, rather than granting GS-level upgrade); *Jehle v. Heckler,* 603 F.Supp. 124, 127 (D.D.C.1985) (holding that if classification review determines position is misclassified, government may raise or lower rating of position). Thus, it was never guaranteed that the position would be classified at GS–13.

Plaintiff argues that her situation is analogous to that of a worker who is not being compensated at the same level for doing substantially the same task as another worker because of discrimination by the employer. *See, e.g., Jehle v. Heckler,* 603 F.Supp. 124 (D.D.C.1985); *Nitterright v. Claytor,* 454 F.Supp. 130 (D.D.C.1978). However, her situation is distinguishable because the positions under consideration in these two cases previously had been classified at the higher level. In *Jehle,* the plaintiff, a female GS–13 level Program Analyst, argued that she was performing the same duties as a male GS–14 level Program Analyst. The court found that the plaintiff was being paid less than her male counterpart for performing substantially the same work, and awarded a promotion to the GS–14 level. In *Nitterright,* a female GS–5 level Accounting Technician filed a complaint alleging that two white male employees performing substantially similar duties were receiving compensation at the GS–6 level. The court found that the plaintiff had been discriminated against and granted her a promotion to the GS–6 level, applied retroactively to the date she was hired.

These cases are inapposite to plaintiff's case. While in *Jehle* and *Nitterright* the positions in dispute were classified, the posi-

tion in plaintiff's case was unclassified. Indeed, it was unclear at the time she informally was offered the promotion on a temporary basis that the Department would classify the position at level GS–13, as the Department could have decided to reduce the duties of the position and classify it at the GS–12 level. Thus, the Court finds that she is not entitled to a permanent promotion.

### 2. The Voluntary Nature of Plaintiff's Move to HDL

█ Plaintiff contends that she was not provided with full relief because she left her job as Project Manager involuntarily, and was forced to take a GS–12 level position at HDL. Had she been granted a permanent promotion to the GS–13 level in the initial settlement, she would have carried that promotion to her following jobs. Thus, she would have been entitled to a GS–13 level job at HDL.

Two issues must be resolved in deciding whether the plaintiff's decision to leave the Project Manager position was voluntary. First, there is the question of whether she was permitted to be transferred with the Project Manager position when her branch relocated to Huntsville, Alabama, in March 1987. However, plaintiff does not dispute the fact that she voluntarily declined to move, as she did not wish to relocate outside the Washington area. Defendant's Exhibit 7.

The second issue is whether she was forced to take the position at HDL. Plaintiff contends that she was forced to take the position at HDL because the Department threatened to remove her from the Priority Placement Program (PPP) if she refused. However, the record shows that it is a clearly stated policy of the PPP, applicable to all participants, that "[i]f a registrant who does not have severance pay entitlement declines any valid offer, whether outside or within the commuting area, he/she will be removed from PPP." [10] *See* Priority Placement Program Eligibility and Registration, DOD 1400.200–1–M. Plaintiff was or should have been well aware of the consequences of her actions at the time she joined the PPP, and thus cannot

---

10. Plaintiff did not have severance pay entitlement.

contend she was forced out with the threat that she would be removed from the program.[11]

Finally, plaintiff contends that the Department delayed the classification of the position, thus denying her the opportunity to weigh the permanent classification in her decision to decline the move to Huntsville, Alabama. Plaintiff's assertion is unsubstantiated. The Department initially promised to classify the Project Manager position in May 1987 and assigned it GS–13 status in September 1987. Although the record indicates that the agency could have acted more swiftly in classifying the position, there is no evidence that the Department deliberately chose to delay the classification. Furthermore, in her initial reply to the offer to move, plaintiff clearly stated that she did not wish to relocate outside the Washington area. This indicates that she was more concerned about her location than maintaining her current salary at the GS–13 level, which she would have been paid had she chosen to move to Huntsville. Hence, her assertion that she might have chosen to go to Huntsville had the classification been completed more rapidly is not supported by the record.

### 3. Attorney's Fees

 Plaintiff also asserts that she was not provided full relief because she was not awarded attorney's fees under 29 C.F.R. 1614.501(e).[12] It is undisputed that an award of attorney's fees for work performed before the filing of the formal complaint is not mandated. Rather, an offer of full relief must provide for the payment of reasonable attorney's fees only for work done between the time the formal complaint is filed and the time the complaint is cancelled. 29 C.F.R. § 1614.501(e)(iv). Therefore, the question before the Court is whether plaintiff was entitled to attorney's fees for legal work done between the time the formal complaint was

filed and the time it was cancelled, even though the informal settlement offer—which was made prior to the filing of the formal complaint—otherwise constituted full relief. The Court finds that, under these circumstances, "full relief" does not include recovery of attorney's fees.

Under defendant's interpretation of 29 C.F.R. § 1614.501(e), which the Court finds persuasive, a complainant should be reimbursed for attorney's fees for the period covering the formal complaint process only if the informal offer rejected by the complainant did not constitute "full relief." If it turned out that the informal offer did constitute "full relief," the complainant should be denied attorney's fees for the formal complaint period. The effect of this interpretation would be to deny complainants who actually were awarded "full relief" during the informal process any claims to attorney's fees incurred during the formal process. This interpretation thus serves the interest of deterring the filing of frivolous formal complaints.

The Court recognizes that, on the other hand, a complainant may not know if his award is insufficient—and that he could recover attorney's fees for the formal complaint period—until after the formal complaint is adjudicated. Thus, complainants unsure of the sufficiency of their award might be hesitant to file a formal complaint, as they might not recover attorney's fees. To ensure recovery of attorney's fees, some complainants may forego informal settlement and proceed directly to the formal complaint process, for which attorney's fees clearly are recoverable under 29 C.F.R. § 1614.501(e).

Although this interpretation of the law may create an incentive for plaintiffs to forgo informal settlement altogether, the Supreme Court has supported an interpretation of a law which created similar incentives.[13] *North Carolina Dep't of Transp. v. Crest Street Community Council, Inc.*, 479 U.S. 6,

11. The record shows that a letter from the Operating Civilian Personnel Office to plaintiff dated May 12, 1987, clearly states that she would be removed from the program for "declination of an offer of a job for which [she was] registered."

12. Plaintiff had retained an attorney by the time she filed the formal complaint. The record also

indicates that plaintiff had consulted an attorney around the time she declined the informal offer. *See* EEOC ORA Denial of Request to Reopen.

13. The law at issue was the Civil Rights Attorney Fees Act and 42 U.S.C. § 1988.

107 S.Ct. 336, 93 L.Ed.2d 188 (1986). The ruling in that case created an incentive to file protective suits in federal court to ensure an award of attorney's fees, while simultaneously pursuing an administrative solution. The Supreme Court limited the award of attorney's fees to parties who found it necessary to file a complaint in federal court in order to obtain relief for their Title VII claims. *Id.* at 14, 107 S.Ct. at 341. Although the Supreme Court acknowledged this interpretation might create an incentive to file protective suits which could result in the further clogging of federal courts, the Court found that "competent counsel will be motivated by the interest of the client to pursue ... administrative remedies when they are available and counsel believes that they may prove successful." *Id.* at 14–15, 107 S.Ct. at 341. The Court also reasoned that it could not base its interpretation of a statute on the assumption that "an attorney would advise the client to forgo an available avenue of relief solely because [the statute] does not provide for attorney's fees." *Id.*

In this case, the creation of an incentive to forgo the informal proceedings is not sufficient to outweigh the interest served by denying recovery of attorney's fees where the informal settlement offer otherwise constitutes "full relief." Thus, the Court rejects plaintiff's argument that "full relief" must include attorney's fees.

### Conclusion

For the foregoing reasons, the Court grants defendant's motion for summary judgment and denies the plaintiff's motion for summary judgment.