**Josephine GERARDI, Plaintiff,**

v.

**HOFSTRA UNIVERSITY, Defendant.**

**Civ. A. No. CV–93–0586 (DGT).**

United States District Court,
E.D. New York.

Aug. 24, 1995.

Alan E. Wolin, Wolin & Wolin, Jericho, NY, for plaintiff.

Stuart H. Bompey, John D. Giansello, Diane Krebs, Theresa C. Mannion, Orrick, Herrington & Sutcliffe, New York City, for defendant.

### MEMORANDUM AND ORDER

TRAGER, District Judge:

Plaintiff filed this employment discrimination action pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, claiming that defendant, Hofstra University ("Hofstra"), failed to hire her based on her age. Before the Court is Hofstra's motion for summary judgment.

### Background

In June, 1990, Hofstra posted an advertisement seeking to hire an Advisement Counsel-

or. Gerardi Aff. ¶ 9; Def.'s Mem.Supp. Summ.J.; Spencer Aff. ¶ 7. In this announcement, Hofstra indicated that the applicants were, at a minimum, required to possess a Bachelor's degree and, if the applicant did not possess a Master's degree, the applicant would be required to enroll in a Master's program. Gerardi Aff. ¶ 10; Spencer Aff. ¶ 8, Ex. B. On July 11, 1990, the final date on which applications would be accepted, Josephine Gerardi, who was born January 16, 1944, and who recently had received her Master's degree in Counselor Education from Hofstra, contacted Karin Spencer, Hofstra's Director of University Advancement. Gerardi Aff. ¶¶ 4, 12, 16; Gerardi Dep. at 40.

Gerardi was invited in to meet Spencer for a pre-screening interview on July 13, 1990. Gerardi Aff. ¶ 16; Spencer Aff. ¶ 16. Both parties admit that during this interview, Spencer advised Gerardi that although many of the other counselors were younger, there were other employees at the office who were approximately the same age as herself and Gerardi. Gerardi Aff. ¶¶ 16, 19; Spencer Aff. ¶ 18; Spencer Dep. at 30–31. Although Spencer maintains that she indicated to Gerardi that she "looked favorably upon an individual who was a little older and more settled in the area", Spencer Aff. ¶ 18, Gerardi claims she was never told that her age was a factor in her favor. Gerardi Aff. ¶ 20. Additionally, Gerardi claims that Spencer informed her that Advisement Counselors worked 9 a.m. to 5 p.m., except that one day each week, they were required to work until 8 p.m. Gerardi Aff. ¶ 18. Spencer, however, claims she informed Gerardi that counselors worked a "minimum" of one evening each week. Spencer Dep. at 29–30.

According to Gerardi, twelve of the twenty individuals who had met with Spencer were granted call-back interviews. Gerardi Aff. ¶¶ 25, 27. However, in late July, 1990, Gerardi was informed that she was not granted a call-back interview. Gerardi Aff. ¶¶ 25, 27; Spencer Dep. at 57. Gerardi was also in-

formed by Spencer that Hofstra had hired two other applicants, aged 22 and 25. Gerardi Aff. ¶¶ 25, 26; Spencer Dep. at 64–65, 68. At that time, neither applicant had received a Master's degree. Gerardi Aff. ¶ 57; Spencer Aff. ¶¶ 23, 24.

On November 14, 1990, Gerardi filed a complaint with the New York State Division of Human Rights, which was forwarded to the Equal Employment Opportunity Commission ("EEOC"). Gerardi Aff. ¶¶ 123, 124. In its response, Hofstra asserted that it chose not to hire Gerardi because she lacked college-level student services work experience. Crance Aff. ¶ 9; DaVolio Aff. ¶ 10; Hickling Aff. ¶ 13. Furthermore, Hofstra maintained that its Director, Associate Director, and Assistant Director of Advisement, and two part-time individuals, who Spencer believed to be "Counselors" were all over thirty-four years old. Spencer Dep. at 69–72.[1]

On June 15, 1992, the EEOC issued a determination, stating that the record suggested that Hofstra's reasons for not hiring Gerardi were pretext for unlawful age discrimination. Gerardi Aff. ¶¶ 125–27, Ex. N. Pursuant to 29 U.S.C. § 626(d), the EEOC then sought to rectify the alleged discrimination through "conciliation, conference, and persuasion." Gerardi Aff. ¶ 128. In August 1992, in response to the EEOC's conciliation efforts, Hofstra offered Gerardi a position as an Advisement Counselor, with seniority retroactive to July 1990, and a back pay cash payment. Gerardi Aff. ¶ 133; Gerardi Dep. at 125–27. Gerardi quit her job at the Board of Cooperative Educational Services of Nassau County and reported for work on September 1, 1992. Gerardi Aff. ¶ 134; Gerardi Dep. at 128. When she showed up at work, Gerardi discovered that this job was a newly created position to counsel part-time students and that the hours for this job were to be noon to 8 p.m. Monday through Thursday, and 9 a.m. to 5 p.m. on Friday. Gerardi Aff. ¶¶ 134–35; Gerardi Dep. at 131, 133. Gerar-

---

1. After discovery, Gerardi claims that during 1985–1990, all five Advisement Counselors hired by Hofstra were in their twenties. Gerardi Aff. ¶ 112. However, Hofstra maintains that this was "due to [the] low pay level of the position, [as a result of which] the vast majority of the applicant pool for the Advisement counselor positions are recent college graduates who are in their twenties." Spencer Aff. ¶ 10. Neither party has submitted precise evidence on this question.

di then refused to accept Hofstra's offer (Gerardi Aff. ¶ 134, 135; Gerardi Dep. at 131, 133).

According to Gerardi, and there is nothing in the record at this point to indicate otherwise, she told the EEOC counselor that because she needed to take care of her 14–year old son who was living at home, she would be unable to regularly work the evening hours. Gerardi Aff. ¶ 136; Gerardi Dep. at 133. According to Gerardi, the EEOC counselor stated that the counselor "assumed that they [the hours] were the same as the position originally applied for" and told Gerardi that she would attempt to resolve the matters. Gerardi Aff. ¶¶ 136–37; Gerardi Dep. at 132. When the EEOC counselor got back to Gerardi, she was told, "[w]ell that's the position." Gerardi Dep. at 133. Gerardi claims that she then sent a letter outlining what happened to the EEOC counselor's supervisor.[2] Gerardi Dep. at 133.

On September 30, 1992 the EEOC informed Gerardi that it was terminating its investigation of her claim, and issued her a right to sue letter. Gerardi Aff. ¶ 142. This letter further indicated that Hofstra's offer constituted "all relief [the EEOC] could expect to obtain were [the EEOC] to litigate the case." Gerardi Aff. Ex. O. According to Gerardi, in December 1992, Hofstra once again offered her a position as an Academic Counselor. Gerardi Dep. at 138. Although the hours for this job were to be 9 a.m. to 5 p.m., Gerardi refused this offer because Hofstra had not offered any backpay or retroactive seniority. Gerardi Dep. at 138. On January 18, 1993, Gerardi filed this lawsuit in the Eastern District of New York.

### Discussion

In support of its motion for summary judgment, Hofstra advances two arguments. First, relying upon *Wrenn v. Secretary, Dep't of Veterans Affairs*, 918 F.2d 1073 (2d Cir. 1990), *cert. denied*, 499 U.S. 977, 111 S.Ct. 1625, 113 L.Ed.2d 721 (1991), Hofstra argues that Gerardi's refusal to accept its first offer during the EEOC's conciliation efforts, which allegedly constituted full relief, bars her claim in federal court. *Id.* at 1078. Second,

Hofstra argues that it is entitled to judgment as a matter of law as Gerardi has not established that any genuine issues of material facts exist, and as she has not established a prima facie claim of age discrimination.

*The August 1992 "Settlement" Offer*

■ The issue of "what constitutes full relief is ultimately a legal question to be determined by the court." *Greenlaw v. Garrett, Secretary, Dep't of the Navy*, 59 F.3d 994, 998 n. 12 (9th Cir.1995). *See also Frye v. Aspin*, 997 F.2d 426 (8th Cir.1993) (government's offer must be examined by the court even after certified by EEOC as an offer of full relief); *Allen v. West*, 884 F.Supp. 519, 523 (D.C.1995) ("under EEOC precedent, the remedy a plaintiff seeks is 'a matter of law, which may be totally independent of any relief which the complainant may have initially sought in his complaint'") (quoting *Ducay v. United States Postal Serv.*, 91 FEOR 3050, XII–620, EEOC No. 05900470 (1990)). In the present case, the underlying facts of the offer are undisputed. In August, 1992, Gerardi was offered relief which included reinstatement, backpay, and retroactive seniority. She claims that she rejected this offer because the hours and responsibilities of this newly created position were not the same as the job for which she had previously applied. The legal issue that remains is whether this offer constituted one of full relief.

■ Under the ADEA, a "claimant is entitled to be made whole for losses sustained as a result of a wrongful termination." *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1100 (3d Cir.1995) (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975)). An offer of relief must, therefore, constitute a makewhole remedy and provide the claimant all the relief to which he "would be entitled if he prevailed on his complaint." *Allen, supra*, 884 F.Supp. at 523.

■ Although there do not appear to be any cases discussing whether an offer of "full relief" requires substantially similar job responsibilities and work schedule, there are analogous cases addressing this question in

---

2. This letter was not submitted by either party.

the context of plaintiff's duty to mitigate. Those cases generally hold that the employee is not obligated to accept a position that " 'is not consonant with his particular skills, background, and experience' or 'which involves conditions that are substantially more onerous than his previous position.' " *Ford Motor Co. v. EEOC*, 458 U.S. 219, 232 n. 16, 102 S.Ct. 3057, 3066 n. 16, 73 L.Ed.2d 721 (1982) (quoting *NLRB v. Madison Courier, Inc.*, 472 F.2d 1307, 1320–21 (D.C.Cir.1972)). In determining whether a rejection of reinstatement is reasonable, the terms and conditions of employment, including the hours and days the employee is required to work, are relevant factors in determining the reasonableness of a rejection. *See, e.g., Rasimas v. Michigan Dep't of Mental Health*, 714 F.2d 614, 624 (6th Cir.1983), *cert. denied*, 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 537 (1984) (substantial equivalence inquiry extends to "job responsibilities, working conditions, and status"); *McCann Steel Co. v. NLRB*, 570 F.2d 652, 655 (6th Cir.1978) (substantially equivalent employment "refers to the hours worked ... as well as the nature of the work").

In the present case, both the job responsibilities and hours of Hofstra's offered position were different from the position for which Gerardi had initially applied. The position offered to Gerardi in August 1992 was a newly created position to counsel part-time students. The hours for this new position were to be noon to 8 p.m. Monday through Thursday, and 9 a.m. to 5 p.m. on Friday. Gerardi claims that while she would be able to work one evening a week, her responsibilities at home precluded her from regularly working the evening hours more than once a week. According to Gerardi, Hofstra was informed by both Gerardi and her EEOC counselor that the hours for this new position were not suitable. Although Hofstra could have moved one of the two younger Counselors who had been hired to another position, it, nevertheless, chose to create a new position for Gerardi, and continued to refuse to accommodate her schedule even when informed that the hours posed substantial difficulty for her. Hofstra's offer cannot, therefore, be considered one of full relief. *See Poulsen v. City of North Tonawanda, New*

*York*, 811 F.Supp. 884, 890–91 (W.D.N.Y. 1993) (offer not considered full relief where it had not been certified as such by the EEOC and plaintiff still had the right under Title VII to seek establishment of policies to prevent future incidents of sexual harassment).

*Consequences of the August 1992 Offer*

Even assuming that Hofstra's offer constituted one for full relief, Gerardi's ADEA claim against a private employer would still not be barred in federal court. In *Wrenn*, the Second Circuit held that once a complainant files an EEOC complaint against a federal employer, the person is required to complete the administrative process before commencing an action under either Title VII or ADEA. *Wrenn, supra*, 918 F.2d at 1078. *See also McGinty v. United States Dep't of the Army*, 900 F.2d 1114, 1117 (7th Cir.1990); *Rivera v. United States Postal Service*, 830 F.2d 1037, 1038 (9th Cir.1987), *cert. denied sub nom. Rivera v. Frank*, 486 U.S. 1009, 108 S.Ct. 1737, 100 L.Ed.2d 200 (1988); *Castro v. United States*, 775 F.2d 399, 403 (1st Cir. 1985); *Purtill v. Harris*, 658 F.2d 134, 138– 39 (3d Cir.1981), *cert. denied, Purtill v. Heckler*, 462 U.S. 1131, 103 S.Ct. 3110, 77 L.Ed.2d 1365 (1983). *But see Langford v. United States Army Corps of Engineers*, 839 F.2d 1192, 1193–95 (6th Cir.1988); *Stevens v. Dep't of the Treasury*, 500 U.S. 1, 8–9, 111 S.Ct. 1562, 1567–68, 114 L.Ed.2d 1 (1991) (choosing not to rule on the merits of the exhaustion issue under section 633a(b) with concurring opinion by Justice Stevens stating that no exhaustion requirement exists under the ADEA); *Adler v. Espy*, 35 F.3d 263, 265 (7th Cir.1994) ("the government's change of heart [in *Stevens*] persuade us that ... [failure to exhaust] does not block [plaintiff's] suit."); *Chennareddy v. Bowsher*, 935 F.2d 315, 321 (D.C.Cir.1991) (government's position "in *Stevens* [conceding that exhaustion is not required under the ADEA for federal employers] suggests that the decision upon which [defendant] premised its exhaustion argument may have lost persuasive force"). The exhaustion requirement, in conjunction with the requirement of good faith participation, convinced the Second Circuit that because the plaintiff had refused an EEOC–

negotiated offer of full relief, his suit against the federal employer was barred. *Wrenn supra*, 918 F.2d at 1077–78.

However, whatever merits there are from a policy point of view for an exhaustion requirement—and they are indeed substantial—extending *Wrenn*'s holding that ADEA plaintiffs suing federal employers must exhaust all administrative remedies to ADEA plaintiffs suing private employers would be inappropriate for several reasons. First, under the ADEA, once a complainant files a charge with the EEOC against a federal employer, it is unclear when the complainant may then commence a civil action. 29 U.S.C. § 633a(d) (1985). The *Wrenn* court interpreted this section as requiring complete exhaustion of the administrative process before filing a civil suit. *See Wrenn, supra.*[3] In ADEA actions against private employers, however, Congress has unambiguously provided that a civil action may be commenced after sixty days of filing an EEOC charge, making no mention of any required completion of the administrative process. *See* 29 U.S.C. § 626(d) (1985). *See also Ingram v. Dallas County, Texas*, 688 F.Supp. 1146, 1159 (N.D.Tex.1988) (issue of exhaustion for federal employer discrimination cases are "totally inapposite" to question of exhaustion involving private employers since "[t]he ADEA complainant's right to initiate a private lawsuit and remove the cause to a judi-

cial rather than administrative forum is unfettered after 60 days").

Second, in *Wrenn*, the court wrote that the plaintiff, having "initiated administrative proceedings on his ADEA claim, was thus obliged to exhaust such proceedings before filing a civil action under the ADEA." *Wrenn, supra*, 918 F.2d at 1078. However, this premise is inapplicable to the present action against a private employer. Unlike complainants against federal employers, complainants against private employers are not given the option whether to initiate an EEOC charge or sue. They have no choice; they must file an EEOC charge. 29 U.S.C. § 626(d). Accordingly, insofar as *Wrenn* rests on the view that a plaintiff, having chosen an administrative remedy, should be required to follow through on it, the argument is inapplicable to ADEA claims brought against private employers. *See* 29 U.S.C. § 626(d) (1985). *See Farber v. General Electric Co.*, 1994 WL 46519, at *6 n. 5 (E.D.Pa. Feb. 16, 1994) (*Wrenn*'s reasoning inapplicable in ADEA case against private employers); *Blistein v. St. John's College*, 860 F.Supp. 256, 269–271 (D.Md.1994) (after withdrawing his ADEA complaint after 60 days, private ADEA plaintiff had met the literal requirements of the ADEA, and had therefore exhausted all administrative remedies).[4]

---

**3.** The reasoning behind *Wrenn* 's holding with respect to ADEA, as distinguished from Title VII, federal employees is somewhat unclear. First, the *Wrenn* court stated that "an applicant for federal government employment may bring suit (i) thirty days after giving notice to the EEOC ... or (ii) after receiving notice of a final administrative decision...." *Wrenn*, 918 F.2d at 1078. However, the regulation to which the Second Circuit cites for the above provision explicitly states that the above procedure shall not apply to age discrimination complaints. *See* 29 C.F.R. § 1613.514 (1994). Second, prior to *Wrenn*, the EEOC regulations for complaints against federal employers based on age discrimination were amended to require that the "filing of a civil action ... terminates [agency] processing." 29 C.F.R. § 1613.513 (1994). Because this amendment applies only to suits filed after November 30, 1987, the Second Circuit, in dicta, initially accepted the "view that exhaustion is not required even if the ADEA claimant has initiated administrative proceedings is undoubtedly correct for suits commenced after November 30, 1987, since otherwise the claimant who pursues

both avenues would find both automatically closed." *Bornholdt v. Brady*, 869 F.2d 57, 63 (2d Cir.1989). Yet, less than one year after *Bornholdt*, the Second Circuit in *Wrenn* stated that it had "never ... addressed" the issue of whether full exhaustion is required and then, without any mention of *Bornholdt*, required exhaustion for an ADEA plaintiff who filed after November 30, 1987. *Wrenn*, 918 F.2d at 1075, 1078. Unfortunately, neither party cited *Bornholdt* or raised this argument in papers submitted to this Court.

**4.** Although complainants suing private employers must file EEOC charges under both Title VII and ADEA, *Wrenn* 's holding with respect to Title VII federal employers still cannot be extended to private employers under the ADEA because Title VII requires that complainants receive final dispositions from the EEOC prior to filing suit against federal employers. 42 U.S.C. § 2000e–16(c) (1985). *See also Long v. Ringling Bros.–Barnum & Bailey Combined Shows, Inc.*, 9 F.3d 340, 343 (4th Cir.1993) (limiting *Wrenn* 's holding to federal employees and refusing to bar

■ Third, although the policy reasons cited by *Wrenn* are sound, in light of the explicit language of subsection 626(d), here they do not support barring plaintiff's claim. At most, all that is required is good-faith participation in the administrative process until the lawsuit is brought. Case law establishes that claims will be dismissed only if the record "disclose[d] that the plaintiffs failed to cooperate." *Munoz v. Aldridge,* 894 F.2d 1489, 1492 (5th Cir.1990). In *Munoz,* the court accepted the plaintiffs' argument that the "plain language of [Title VII] supports" their argument that "they are entitled to bring suit once 180 days have elapsed since the filing of their initial administrative complaint." *Id. See also Edwards v. Dep't of the Army,* 708 F.2d 1344, 1347 (8th Cir.1983) (plaintiff's "fail[ure] to provide the EEO officer with the information she needed to take any meaningful action on his complaint" constituted a failure to exhaust administrative remedies); *Johnson v. Bergland,* 614 F.2d 415, 417–18 (5th Cir.1980) (because the plaintiff's responses were "insufficient to enable the [EEOC] to determine that complaint of discrimination was made and when it occurred," the plaintiff's claim was barred in federal court by failure to exhaust administrative remedies); *Jordan v. United States of America,* 522 F.2d 1128, 1133 (8th Cir.1975) (plaintiff failed to exhaust administrative remedies since his "refusal to raise the racial discrimination issue during the . . . administrative . . . [process] . . . is tantamount to a deliberate bypass of available administrative remedies"). Here, there is no claim that

plaintiff failed to cooperate with the EEOC's administrative processing of her complaint.[5]

Fourth, the EEOC regulations for the processing of discrimination claims against federal employers require that the agency cancel a charge if a complainant refuses a certified offer of full relief. *See* 29 C.F.R. 1613.215(a)(7) (1994). However, when processing ADEA charges against private employers, the regulations make no provision for the EEOC to certify an offer as one of full relief or to cancel a complaint based on a complainant's refusal of an offer of relief. *See* 29 C.F.R. 1625–26 (1994). Thus, ADEA complainants against private employers, who typically proceed pro se in the administrative process, would be required to make the assessment of whether a court would later hold that an offer constituted full relief, without the benefit of any advice or information from the EEOC whether in the EEOC's view, the offer is one that provides full relief. *See Greenlaw, supra,* 59 F.3d at 998–1000 (plaintiff's claim against federal employer not barred by her refusal to accept an EEOC-certified offer of full relief because "[r]equiring a pro se litigant to make this legal assessment, especially if combined with the risk of dismissal imposed by *Wrenn,* violates the policies and principles of Title VII.").

■ Accordingly, *Wrenn* is not applicable to an ADEA claim against a private employer. Because plaintiff was, therefore, not required to complete the EEOC process, even if plaintiff may have refused an offer of full relief, it cannot bar her claim in federal court.[6]

5. In addition, the actual purpose of the EEOC administrative process is to provide notice to the employer and to give the EEOC the opportunity to resolve the dispute through its conciliation efforts. *Greene v. Whirlpool Corp.,* 708 F.2d 128, 130 (4th Cir.1983), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 707, 79 L.Ed.2d 171 (1984). Both purposes have been met in this case since the EEOC had the statutory period of 60 days to attempt conciliation, and Hofstra had been notified that a discrimination charge had been filed against it.

6. Although plaintiff's refusal of an offer of relief does not bar her claim, Hofstra's obligation to

plaintiff's Title VII claim against a private employer based on her refusal to accept an offer of full relief).

pay her damages may be mitigated because an unemployed claimant *"is subject to the statutory duty to minimize damages* . . . forfeit[ing] his right to backpay if he refuses a job substantially equivalent to the one that was denied." *Ford Motor Co., supra,* 458 U.S. at 231–32, 102 S.Ct. at 3065–66 (footnotes omitted) (emphasis supplied). *See also Dominic v. Consolidated Edison Co. of New York, Inc.,* 822 F.2d 1249, 1258 (2d Cir.1987) (applying *Ford Motor Co.* rule to ADEA claims); *Fairhead v. Deleuw, Cather & Co.,* 817 F.Supp. 153, 160, (D.C.1993), *aff'd without op.,* 1 F.3d 45 (D.C.Cir.1993) (because defendant offered plaintiff all that he would be entitled to in federal court, his claim for relief was barred).

In order for defendant to limit its backpay liability under *Ford Motor Co.,* however, defendant must have extended to plaintiff an uncondi-

*Genuine Issues of Material Fact under Rule 56(c)*

Hofstra claims that it is entitled to judgment as a matter of law because the pleadings and evidence on file demonstrate that no genuine dispute exists as to any material fact. *See* Fed.R.Civ.P. 56(c) (1994). *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ The Supreme Court has established a three-step, burden-shifting analysis to assess ADEA claims. *St. Mary's Honor Ctr. v. Hicks,* — U.S. —, — – —, 113 S.Ct. 2742, 2746–49, 125 L.Ed.2d 407 (1993). First, plaintiff must establish a prima facie case of unlawful discrimination. To rebut this presumption of discrimination, defendant must articulate a legitimate, non-discriminatory reason for its action. Finally, if defendant meets its burden, plaintiff must then demonstrate that those proffered reasons were not defendant's true reasons for its actions and that age was the determinative reason.[7] *Gallo v. Prudential Residential*

*Servs., Ltd. Partnership,* 22 F.3d 1219, 1225–26 (2d Cir.1994); *Spence v. Maryland Casualty Co.,* 995 F.2d 1147, 1155 (2d Cir.1993); *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.,* 964 F.2d 106, 110–111 (2d Cir. 1992).

■ Viewing all facts in her favor, Ms. Gerardi has established a prima facie case since she was in the protected age group, was qualified for the position of Advisement Counselor, and was rejected in favor of two younger applicants. *See Robinson, supra,* 21 F.3d at 508; *Taggart v. Time Inc.,* 924 F.2d 43, 46 (2d Cir.1991).

■ Nonetheless, defendant has articulated a legitimate nondiscriminatory motive for its decision not to hire Ms. Gerardi, maintaining that her age was not a factor in its decision to hire the two applicants who were allegedly better qualified than Ms. Gerardi. Plaintiff, however, has advanced several disputed facts which, when viewed in her favor, would indicate that defendant's purported

---

tional offer of full reinstatement. *Ford Motor Co.,* 458 U.S. at 238–39, 102 S.Ct. at 3069. As stated in *Ford Motor Co.:*

> The claimant's obligation to minimize damages in order to retain his right to compensation does not require him to settle his claim against the employer, in whole or in part. Thus, an applicant ... is not required to accept a job offered by the employer on the condition that his claims against the employer be compromised.

*Id.* at 232 n. 18, 102 S.Ct. at 3066 n. 18. *See also Clarke v. Frank,* 960 F.2d 1146, 1151 (2d Cir.1992) (defendant's offer, plac[ing] no qualifications on [plaintiff's] reinstatement was unconditional); *Odima v. Westin Tucson Hotel,* 53 F.3d 1484, 1496–97 (9th Cir.1995) (plaintiff did not fail to mitigate his damages where he rejected a job offer "expressly conditioned upon [] relinquishing his discrimination claims against" the defendant); *Toledo v. Nobel–Sysco, Inc.,* 892 F.2d 1481, 1493 (10th Cir.1989), *cert. denied,* 495 U.S. 948, 110 S.Ct. 2208, 109 L.Ed.2d 535 (1990) (because defendant's offer to plaintiff "was conditioned on [plaintiff] dropping his claim" and was, therefore, "not unconditional, the district court erred in concluding that" plaintiff had failed to mitigate his damages); *Figgs v. Quick Fill Corp.,* 766 F.2d 901, 903 (5th Cir.1985) (under *Ford Motor Co.,* "a claimant's obligation to mitigate damages does not require him or her to accept an offer that conditions employment on the claimant's agreement to compromise his or her discrimination claims."); *Curl v. Reavis,* 740 F.2d 1323, 1331 (4th Cir.1984) ("[h]ad a waiver

requirement been attached to the offer" plaintiff "could have suffered no liability in rejecting the offer."); *Miano v. AC & R Advertising, Inc.,* 875 F.Supp. 204, 221 (S.D.N.Y.1995) (defendant's offer was unconditional since there was no evidence "that the offers were, in fact, conditioned on the abandonment of [the plaintiff's] legal claims"); *Williams v. J.C. Penney Co., Inc.,* 1991 WL 150617, at *2 (S.D.N.Y. July 30, 1991) ("unconditional offer is one in which the plaintiff is not required to give up any claims for damages.").

Here, the August 1992 offer cannot be considered unconditional since it specified that plaintiff would be required to provide a "full and complete release of Hofstra University by Ms. Gerardi for any and all claims that could be asserted by Ms. Gerardi." Gerardi Aff.Ex.P. However, the second offer, which plaintiff stated occurred in December 1992, may have been an unconditional offer of reinstatement. Defendant has not raised this as a defense, and neither party has provided any evidence upon which a determination can be made.

7. In order to show age discrimination, plaintiff need not prove that age is the sole determinative factor in the defendant's employment decision. *See, e.g., Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 508 (2d Cir.1994); *Cooley v. Carmike Cinemas, Inc.,* 25 F.3d 1325, 1333 (6th Cir.1994); *Kralman v. Illinois Dep't of Veterans' Affairs,* 23 F.3d 150, 152 (7th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 359, 130 L.Ed.2d 313 (1994).

non-discriminatory reason was pretextual and that age was the determinative factor. *See Binder v. Long Island Lighting Co.,* 57 F.3d 193, 199 (2d Cir.1995) (rejection of employer's proffered reasons permits the fact-finder to infer discrimination) (citing *St. Mary's Honor Ctr., supra,* —— U.S. at —— n. 4, 113 S.Ct. at 2749 n. 4).

Thus, Gerardi has made a sufficient showing that her qualifications may have been superior to not only the two younger applicants who were eventually hired, but also to the ten applicants who received call-back interviews. This alone bars the granting of Hofstra's motion for summary judgment. Additionally, Gerardi has also submitted statistical evidence concerning Hofstra's history of hiring Advisement Counselors who were in their twenties, which if viewed in her favor, could lead a reasonable fact-finder to conclude that Hofstra has a pattern of discrimination against older applicants.[8] *See Alphin v. Sears, Roebuck & Co.,* 940 F.2d 1497, 1500 (11th Cir.1991); *Conroy v. Anchor Sav. Bank, FSB,* 810 F.Supp. 42, 47 (E.D.N.Y. 1993) (inference of age discrimination may be shown by direct evidence, statistical evidence, or circumstantial evidence such as documentation of preference for younger workers). Furthermore, Gerardi has raised issues regarding the context in which the subject of her age was mentioned during her interview for the position of Advisement Counselor. *See, e.g., Robinson, supra,* 21 F.3d at 508 (statement that manager wanted to replace older employees with "young tigers" was indirect evidence of age discrimination); *Promisel v. First American Artificial Flowers, Inc.,* 943 F.2d 251, 259 (2d Cir.1991) (statement to plaintiff's replacement that "he was needed to replace an 'older gentleman' because [defendant was] looking for 'younger blood' " supported finding of pretext for age discrimination), *cert. denied,* 502 U.S. 1060, 112 S.Ct. 939, 117 L.Ed.2d 110 (1992); *Alphin, supra,* 940 F.2d at 1500 (statement by store manager to 50-year-old sales manager that "both of us had been around too long and were too old and were making too much money" were circum-

stantial evidence to show discriminatory intent).

In sum, resolving all the factual disputes in Gerardi's favor, which we must do at this point, Gerardi has sustained her burden of establishing that a jury question exists whether age discrimination may have been the determinative factor in the defendant's decision not to hire her.

### Conclusion

Accordingly, Hofstra's motion for summary judgment is denied.

**SO ORDERED.**

---

8. As noted previously, Hofstra maintains that this was due to the young age composition of the entire applicant pool. However, Hofstra did not submit precise evidence on this question.